Michael L. Rabb (#13734)
Lana L. Rupprecht (#63223675)
THE RABB LAW FIRM, PLLC
3950 Valley Commons Drive Suite 2
Bozeman, Montana 59718
Telephone: (406) 404-1747
Facsimile: (406) 551-6847
Email:  service@therabblawfirm.com
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| RHONDA STATON, an individual, | CASE NO. CV-20-60-BU-BMM |
| Plaintiff, | |
| vs. | |
| BUTTE-SILVER BOW LAW ENFORCEMENT DEPARTMENT; CITY AND COUNTY OF BUTTE-SILVER BOW; THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BUTTE-SILVER BOW; and BUTTE-SILVER BOW COUNTY SHERIFF ED LESTER, in his individual capacity; and DOES 1-10, | **COMPLAINT FOR DAMAGES JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Rhonda Staton, by and through her attorneys, The Rabb Law Firm,

PLLC, for her Complaint for Damages against Defendants, Butte-Silver Bow Law

Enforcement Department; City and County of Butte-Silver Bow; the Board of County Commissioners of the County of Butte-Silver Bow;  Butte-Silver Bow County Sheriff Ed Lester, in his individual capacity; and Does 1-10, alleges as follows:

## **PARTIES**

1.      Plaintiff Rhonda Staton is a female and resident of Butte, Montana and at all relevant times, an employee (and now former employee) of the Defendant, Butte-Silver Bow Law Enforcement Department (LED).  Defendant LED is a department of Butte-Silver Bow.

2.      Defendant LED is a department of Defendant Butte-Silver Bow City and County (Butte-Silver Bow).

3.      Defendant Butte-Silver Bow, is a Municipal Corporation and Political Subdivision of the State of Montana.

4.      Defendant, the Board of County Commissioners of Butte-Silver Bow (Commissioners) are responsible for various decisions and policies of the Butte-Silver Bow government and its respective Departments.

5.      Defendant Sheriff Ed Lester is an individual who holds the elected office of Sheriff of the LED / Butte-Silver Bow.

6.      At the time this Complaint was filed, Plaintiff was ignorant of the true names and capacities of Does 1-10 and therefore sue these defendants by such

fictitious names.  Plaintiff is informed and believes that each of the fictitiously named defendants is liable or responsible in some manner to Plaintiff for the damages alleged.  Plaintiffs will amend this Complaint to allege Doe 1-10's true names and capacities when the same are ascertained.

7.     Plaintiff is informed and believes, and on that basis alleges that at all times herein mentioned each of the Defendants, including the Defendants sued herein as Does 1-10, were acting as the agent, servant, partner, joint venturer and/or employee of their co-defendants, and were acting within the scope of that authority with the full knowledge, permission, and express or implied consent of each of the remaining Defendants.

8.     At all relevant times, each of the Defendants LED, Butte-Silver Bow, the Commissioners and Does 1-10 were an "employer" within the meaning of the Montana Human Rights Act, §49-2-101, MCA *et. seq.* and within the meaning of the federal statutes alleged herein:  Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, (Title VII); the Americans with Disabilities Act of 1990 (ADA), as amended, *inter alia* by the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. §12101 *et seq.*; and the Family and Medical Leave Act of 1993 (FMLA), as amended, 28 U.S.C. §2601 *et seq.*

9.     At all relevant times, Sheriff Ed Lester acted as an agent, employee and public officer of LED, Butte-Silver Bow, the Commissioners, and Does 1-10 acting

within the scope of his employment.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over Plaintiff's federal claims because it presents a federal question within 28 U.S.C. § 1331 and civil rights claims within 28 U.S.C. § 1343.  This Court has jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claims that they form part of the same case or controversy.

11.    Venue is proper in this Court under 28 U.S.C. § 1391 and Local Montana District Rule 3.2(b) because the Plaintiff resides within this Federal District and the employment practices, civil rights violations and other conduct alleged to be unlawful occurred in within this Federal District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

12.    On July 31, 2020 and prior to her termination of employment, Plaintiff filed her Charge of Discrimination Number 551-2020-03378 with the Equal Employment Opportunity Commission ("EEOC") and requested dual filing with the Montana Human Rights Bureau ("MHRB") alleging harassment and discrimination based upon sex, age and disability, and retaliatory harassment and retaliation. Plaintiff requested and was issued a Notice of Right to Sue from the EEOC dated August 21, 2020.

13.     On September 22, 2020, Plaintiff filed a Charge of Discrimination with the MHRB and requested dual filing with the EEOC, Charge No. 0200462 (MHRB) and Charge No. 32D-2020-00462 (EEOC). The September 22, 2020 Charge included Plaintiff's August 24, 2020, termination of employment and further alleged harassment and discrimination based on sex, age and disability, and retaliatory harassment and retaliation.  At the time of this filing, a Notice of Right to Sue has not been issued.  Plaintiff will amend this Complaint and Jury Demand upon receipt of a Notice of Right to Sue.

14.     On October 14, 2020, Plaintiff filed a Charge of Discrimination with the MHRB and requested dual filing with the EEOC.  The October 14, 2020 Charge included a claim alleging retaliation under the ADA and further alleged harassment and discrimination taken against Plaintiff post-termination based on sex, age and disability, and retaliatory harassment and retaliation.  At the time of this filing, a Notice of Right to Sue has not been issued.  Plaintiff will amend this Complaint and Jury Demand upon receipt of a Notice of Right to Sue.

15.     Plaintiff has met all additional administrative prerequisites prior to filing this action including submitting a "Notice of Claim" pursuant to §2-9-301 (3), MCA, dated October 20, 2020  and delivered on October 20, 2020 to the appropriate entity, which was denied by Defendants on November 6, 2020.

## FACTUAL ALLEGATIONS

16.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

17.    Plaintiff began working for Defendant LED on December 10, 2001 until she was involuntarily and illegally terminated by Defendants on August 24, 2020.

18.    When Plaintiff initially began employment with LED on December 10, 2001, she worked as a police officer.

19.    On or about July 7, 2008, Plaintiff was promoted to the position of Detective and initially worked in the Drug Division.

20.    In 2009, Plaintiff was assigned to work as a Detective in the Sex Crimes Division.

21.    Throughout her 18 ½ years of employment, Plaintiff received increases in pay based upon her years of service and performance as well as internal and external accolades based upon her performance and work product.

22.    Plaintiff has no discipline recorded in her personnel file.

23.    Beginning on or about May of 2017 to the present, Plaintiff was the only female Detective for LED.

24.    Upon information and belief, the one other female Detective (other than Plaintiff) who worked for LED resigned from her position in May of 2017 because

she believed she was treated differently and held to different standards than her similarly situated male counterparts.

25.   Throughout her employment, Plaintiff was treated less favorably than her similarly situated male counterparts and discriminated against in the terms, conditions and privileges of her employment based upon her protected status(es).

26.   Throughout her employment, Plaintiff was subject to continuous severe and pervasive workplace harassment and/or a hostile work environment based upon her protected status(es).

27.   Examples of the disparate treatment, harassment and/or hostile work environment directed at Plaintiff by agents of Defendants include, but are not limited to:

a.   putting tampons and other offensive items targeting Plaintiff's gender in only Plaintiff's mailbox;

b.   posting outside Plaintiff's door a calendar showing a male employee with a superimposed Glock handgun in front of that male employee's penis;

c.   taking photos of Plaintiff sitting on an exercise/fit ball, and displaying the photo in the office stating she was in the "Special Olympics";

d.   pointing a laser contained on a weapon at only Plaintiff and not at other similarly situated male employees in an intimidating and threatening

manner;

e.   regularly shouting and screaming at Plaintiff, but not at similarly situated male employees, in a threatening and disrespectful manner;

f.   throwing and breaking expensive County equipment in a threatening manner in Plaintiff's presence directly in response to Plaintiff's comments, making Plaintiff fearful for her safety;

g.   admonishing Plaintiff for participating in Department related social functions but not doing so to similarly situated male employees;

h.   making what was later to be proven to be a false complaint about Plaintiff but not her similarly situated male counterparts in relation to her work on a homicide case.

28.   In an attempt to make the harassment and discrimination stop, Plaintiff first tried to resolve and correct this through the chain of command but the discrimination and harassment continued.

29.   Plaintiff engaged in protected activity by submitting internal complaints alleging discrimination, harassment and retaliation on at least the following dates:  May 23, 2018, October 1, 2019, October 22, 2019, December 23, 2019, January 23, 2020 and July 31, 2020.

30.   On or about May 23, 2018, Plaintiff prepared a written complaint to Butte Silver Bow Human Resources (Human Recourses) alleging harassment,

hostile work environment, disparate treatment and discrimination by Defendants.

31.     After presenting the May 23, 2018 Complaint and discussing its contents with Human Resources, Plaintiff requested that the Complaint be withdrawn because she was worried about retaliation.

32.     Upon information and belief, Human Resources, even though it had knowledge of and a copy of the May 23, 2018 Complaint, did not take any action in response; as a result the discrimination and harassment against Plaintiff continued.

33.     On or about October 1, 2019, Plaintiff met in-person with Human Resources where she complained, in good-faith, about discrimination, harassment, hostile work environment and violent behavior in the workplace from one of the Sergeants.

34.     On or about October 22, 2019, Plaintiff prepared a written complaint to Human Resources where she complained about discrimination, harassment, hostile work environment and violent behavior in the workplace against her due to her protected status(s).

35.     Plaintiff, had a reasonable and good faith belief that these actions directed at her constituted harassment and/or discrimination based upon her protected status(es) and even stated in her October 22, 2019 complaint that she was "in fear of retaliation, possibly losing my position as senior detective in the division or even worse, losing my job for filing this Complaint."

36.    Plaintiff's supervisors, her captain, most of her co-workers and Sheriff Ed Lester became aware that Plaintiff submitted the October 22, 2019 complaint.

37.    After Plaintiff submitted the October 22, 2019 complaint, the harassment and discrimination against Plaintiff by Defendants and their agents became worse and turned into retaliatory harassment that included, but was not limited to:

a.   assigning Plaintiff undesirable call-outs, work shifts and/or assignments;

b.   excluding Plaintiff from attending key and important training;

c.   purposely and consistently isolating and excluding Plaintiff from important work meetings, work events and work functions;

d.   threatening Plaintiff, and no one else, with a demotion unless she made extensive manual changes to her case file folders;

e.   requiring Plaintiff, and no one else, to dedicate over 50 hours of unpaid work time to manually change her case file folders;

f.   prohibiting Plaintiff, and no one else, from privately speaking to anyone in her office with her office door closed;

g.   verbally abusing and admonishing Plaintiff in front of the public and/or her colleagues to the point where it was extremely humiliating and embarrassing for her to communicate with supervisors in the

workplace;

h.  obviously ignoring and physically turning away from Plaintiff when she directly addressed her supervisors and captain in front of the public and her colleagues;

i.  imposing new burdensome work standards on Plaintiff like unjustifiably critiquing, scrutinizing and rejecting Plaintiff's work product such as her cases, case files, case submissions and reports;

j.  holding Plaintiff to a different punitive standard than other similarly situated male counterparts when turning in her electronic case files for review and submission; and

k.  making or permitting improper remarks to Plaintiff in reference to her October 22, 2019 Complaint including but not limited to singing "Let it Go" and then saying, "Isn't that right Rhonda?" and mocking Plaintiff for filing complaints by stating, "I am going to take this all the way to the Supreme Court."

38.  In about November and/or December of 2019, Plaintiff verbally reported to Human Resources the discrimination, retaliation and retaliatory harassment she had recently experienced since filing the October 22, 2019 complaint.

39.  Also in December of 2019, Plaintiff started receiving unjustifiable

redlines, corrections and criticism from her supervisor on her case files.

40.    Plaintiff reported the unjustified corrections and redlines she had received to Sheriff Lester and expressed her concern that she was being retaliated against for submitting the October 22, 2019 complaint.

41.    On or about December 23, 2019,  Plaintiff submitted another internal written complaint to the LED investigator who was investigating her October 22, 2019 complaint.

42.    In that December 23, 2019 complaint, Plaintiff alleged continued discrimination and provided examples of retaliation since she submitted the October 22, 2019 complaint.

43.    Upon information and belief, no action was taken by LED in response to Plaintiff's December 23, 2019 complaint and the retaliation and discrimination continued.

44.    Plaintiff's taser was then removed by someone other than Plaintiff from her locked office, and she became aware that it was missing prior to mandatory taser training in January.

45.    On January 15, 2020, Plaintiff reported the missing taser promptly after discovering that it had been removed from her office.

46.    Plaintiff also noticed other personal items missing from her locked office such as her calendar and thumb drives and her 2018 case file boxes.

47. On or about January 16, 2020, Plaintiff met with Human Resources and Sheriff Ed Lester to discuss her October 2019 complaint.

48. Plaintiff was informed that LED would not take action to protect her from the claimed discrimination and harassment.

49. On or about January 23, 2020, Plaintiff emailed Human Resources where she protested the findings of LED and complained that her work environment had "become more retaliatory, discriminatory and intolerable as a result of the purported investigation."

50. Plaintiff's January 23, 2020 complaint also stated: "[t]he lack of correction only furthers retaliation against me, and I feel even less comfortable coming to work than I did pre-investigation.  My health has been affected to the point that I am barely functioning."  Plaintiff then requested, "appropriate paperwork for my medical provider to be completed for FMLA leave."

51. On January 24, 2020, Sheriff Ed Lester sent Plaintiff an email asking for her to provide written documentation relating to the "loss of [her] Taser."

52. On January 27, 2020, at 9:00 a.m., Plaintiff submitted an email to Sheriff Lester detailing the incident surrounding her missing taser. She further reported the additional missing items in that email to Sheriff Lester such as her calendar, thumb drive, and her 2018 case file boxes.  Plaintiff specifically stated in that January 27, 2020 email that she suspected that someone who had access to her

locked office took her taser without her knowledge.

53.     Upon information and belief, Defendants did not conduct any investigation in response to Plaintiff's assertion that the taser and other items were stolen from her office.

54.     Upon information and belief, Human Resources and Defendants did not look into Plaintiff's additional and new assertions of retaliation, retaliatory harassment and continued discrimination in response to her December 23, 2019 complaint or her January 23, 2020 complaint.

55.     Plaintiff received a letter from Human Resources, dated January 27, 2020, relating to her eligibility for FMLA and attaching a Request for Leave of Absence and FMLA paperwork.

56.     Plaintiff started preparing the paperwork and gathering the appropriate supporting information to support her FMLA request.

57.     Then, on or about February 19, 2020, Plaintiff was required to attend a meeting with Sheriff Lester where the following was discussed: (a) Plaintiff's missing taser; (b) discussion of a "damaged" Glock pistol allegedly belonging to Plaintiff; and (c) ordering Ms. Staton to go on punitive leave and undergo a mandatory psychological evaluation with LED's hired psychologist because Plaintiff had stated in her January 23, 2020 complaint that, "My health has been affected to the point that I am barely functioning.

58.     Defendants, rather than investigate or address the substantive concerns contained in Plaintiff's January 23, 2020 Complaint, placed Plaintiff on punitive leave instead of protected FMLA leave, and did not engage in any sort of interactive process with Plaintiff based upon her health concerns that she raised in her January 23, 2020 Complaint.

59.     The examination by LED's hired psychologist was not appropriate, was invasive and was not job-related nor consistent with business necessity.

60.     On or about July 16, 2020, Sheriff Ed Lester contacted Plaintiff and informed her that Plaintiff needed to resign or the Sheriff would terminate her employment and seek recission of her Peace Operations Specialized Training (POST) certification.

61.     Despite LED's belief that Plaintiff had a psychological disability, it never engaged in the interactive process with Plaintiff or considered any sort of reasonable accommodation for Plaintiff or otherwise followed up with Plaintiff on her request for FMLA leave.

62.     Upon information and belief, the LED has previously offered similarly situated male co-workers of Plaintiff reasonable accommodations in response to their perceived or actual mental health and/or medical issues and/or at least engaged in the interactive process with them.

63.     On July 27, 2020, Sheriff Ed Lester provided a letter to Plaintiff stating

that he intended to terminate her employment.

64.     The alleged reasons for the contemplated termination were pretextual.

65.     On August 3, 2020, Plaintiff responded to the Sheriff with an opposition letter where she protested the proposed termination.  She also protested the Sheriff's failure to provide her with reasonable accommodation and/or additional leave based upon her perceived disability. Further, Plaintiff protested Defendants' failure to provided her with protected leave under the FMLA.

66.     Defendants still did not engage in the interactive process with Plaintiff or appear to consider any sort of reasonable accommodation for Plaintiff or get back to her on her request for FMLA leave.

67.     On July 31, 2020, Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination, harassment and retaliation.

68.     The EEOC notified Defendants about the Charge of Discrimination on August 4, 2020.

69.     Twenty days after learning of the Plaintiff's Charge of Discrimination, the Sheriff terminated Plaintiff's employment on August 24, 2020.

70.     Similarly situated employees who displayed poor performance that was well documented and/or dishonest, illegal, inappropriate, disparaging, violent and similar types of egregious behavior in the workplace were not terminated or often not even disciplined by LED.

71.     After Plaintiff was terminated the retaliation continued. For example, Defendants, upon information and belief, attempted to remove Plaintiff's Peace Operations Specialized Training (POST) Certification.

## CAUSE OF ACTION I – DISCRIMINATION
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e *et seq* and MONTANA HUMAN RIGHTS ACT, §49-2-303(1)(a)
### *(Against Defendants LED, Butte-Silver Bow, the Commissioners and Does 1-10)*

72.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

73.     Plaintiff was the only female detective employed by Defendants at all relevant times up to and including through her termination from employment.

74.     Defendants are employers within the meaning of 42 U.S.C. §2000e and the Montana Human Rights Act.

75.     Plaintiff was qualified and successfully performed her job and throughout her 18 ½ years of employment with Defendants she frequently received accolades and positive performance-related feedback; there was no formal discipline in her personnel file prior to her discharge from employment.

76.     Defendants discriminated against Plaintiff on the basis of her gender/sex with respect to the terms, conditions and privileges of her employment including, but not limited to:

        a. making   discriminatory   delegation   of   duties   and   assignments   to

Plaintiff;

b.  excluding and isolating Plaintiff from important work meetings, training and work-related events;

c.  failing to assign important and desirable assignments to Plaintiff;

d.  requiring Plaintiff to dedicate hours of her personal time organizing boxes and case files without pay;

e.  placing Plaintiff on a punitive leave of absence and not job protected leave;

f.  threatening and attempting to remove Plaintiff's Peace Operations Specialized Training (POST) Certification;

g.  failing to consider alternative light or modified duty arrangements upon Plaintiff's request and requiring Plaintiff to undergo what appeared to be a biased and "fixed" psychological evaluation; and

h.  terminating Plaintiff's employment.

77.   Defendants discriminated against Plaintiff on the basis of her gender/sex by limiting, segregating or classifying Plaintiff in a way to deprive her of employment opportunities or otherwise affect her status as an employee.

78.   Similarly situated male employees who displayed poor performance or unacceptable, egregious and even violent or illegal conduct in the workplace were not discharged, not placed on punitive leave, not required to undergo a psychological

examination and were not otherwise subject to same type of negative treatment, requirements and obligations imposed upon Plaintiff.

79.     Defendants' discrimination against Plaintiff on the basis of her gender/sex lead to her discharge and such actions are unlawful employment practices in violation of Title VII and the Montana Human Rights Act.

80.     Defendants' conduct was intentional and willful and done with malice and/or reckless indifference to Plaintiff's rights and the injuries she suffered as a result.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## CAUSE OF ACTION II - HOSTILE WORK ENVIRONMENT/HARASSMENT
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e *et seq*, AND MONTANA HUMAN RIGHTS ACT, §49-2-303(1)(a)
### *(Against Defendants LED, Butte-Silver Bow, the Commissioners and Does 1-10)*

81.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

82.     Plaintiff was subjected to unwelcome harassment in the form of verbal and physical conduct that was directed at her, and was not directed at similarly situated male employees and which was of a sexual nature and/or based upon Plaintiff's status as a female.

83.     The offensive conduct amounted to actual discrimination because of

Plaintiff's sex/gender.

84.    The harassment Plaintiff experienced was unwelcome.

85.    The effect of this unwelcome harassment and unlawful employment practices has deprived Plaintiff of equal employment opportunities and unreasonably interfered with Plaintiff's work performance, and it was so severe or pervasive that it altered conditions of Plaintiff's employment and created an intimidating, hostile or offensive working-environment that seriously affected the psychological well-being of the Plaintiff.

86.    Defendants' discrimination against Plaintiff by consistently maintaining and condoning a hostile work environment on the basis of Plaintiff sex/gender and failing to take measures reasonably calculated to end the harassment is an unlawful employment practices in violation of Title VII and the Montana Human Rights Act.

87.    Defendants' conduct was intentional and willful and done with malice and/or reckless indifference to Plaintiff's rights and the injuries she suffered as a result.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**CAUSE OF ACTION III – RETALIATION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42**
**U.S.C. §2000e *et seq*, AND MONTANA HUMAN RIGHTS ACT, §49-2-301**
***(Against Defendants LED, Butte-Silver Bow, the Commissioners and Does 1-10)***

88.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

89.     Defendants are employers within the meaning of 42 U.S.C. §2000e and the Montana Human Rights Act.

90.     Plaintiff engaged in activity protected by Title VII and the Montana Human Rights Act by, among other things:

    a.  lodging a written complaint to Human Resources on October 22, 2019 alleging sexual harassment and discrimination;

    b.  submitting a follow up letter to the investigator investigating the October 2019 complaint dated December 23, 2019 also alleging retaliation, harassment and discrimination;

    c.  submitting an email to Human Resources dated January 23, 2020 where Plaintiff protested the results of the  investigation of her October 2019 complaint where Plaintiff complained about additional discrimination, harassment and retaliation; and

    d.  filing  a charge of discrimination with the EEOC on or about July 31, 2020 alleging discrimination, retaliation and harassment.

91.     Shortly after Plaintiff filed the July 31, 2020 charge of discrimination with the EEOC  Defendants unlawfully retaliated against her by, among other things, terminating her employment.

92.     After Plaintiff engaged in other protected activity, Defendants also unlawfully retaliated with respect to the terms, conditions and privileges of her employment and subjected her to materially adverse employment actions by among other things:

    a.  making retaliatory delegation of duties and assignments to Plaintiff;

    b.  excluding and isolating Plaintiff from important work meetings, training and work-related events;

    c.  failing to assign important and desirable assignments to Plaintiff;

    d.  requiring Plaintiff to dedicate hours of her time organizing boxes and case files without pay;

    e.  placing Plaintiff on a punitive leave of absence and not job protected leave;

    f.  threatening and attempting to remove Plaintiff's POST Certification;

    g.  failing to consider alternative light or modified duty arrangements upon Plaintiff's request and requiring Plaintiff to undergo what appeared to be a biased and "fixed" psychological;

93.     Defendants knew about Plaintiff's protected activities at the time that Defendants engaged in the above-described unlawful materially adverse employment actions.

94.     Defendants' retaliatory conduct and adverse employment actions taken

against Plaintiff were taken because of Plaintiff's protected activity.

95.    Defendants' conduct was intentional and willful and done with malice and/or reckless indifference to Plaintiff's rights and the injuries she suffered as a result.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**CAUSE OF ACTION IV- DISABILITY DISCRIMINATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS AND FAILURE TO PROVIDE REASONABLE ACCOMMODATION VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 28 U.S.C. §12101 *et seq*., and MONTANA HUMAN RIGHTS ACT §49-4-101 *(Against Defendants LED, Butte-Silver Bow, the Commissioners and Does 1-10)***

96.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

97.    Defendants are "employers" within the meaning of  42 U.S.C. §12111 and the Montana Human Rights Act.

98.    Defendants perceived that Plaintiff had a mental impairment, which was due to the retaliatory and discriminatory work environment that Plaintiff was consistently exposed to during the course of her employment which substantially limited her ability to perform her job.

99.    Plaintiff was qualified to perform the essential functions of her job and did so throughout her 18 ½ years of employment with LED.

100.    Plaintiff frequently received accolades and positive performance-

related feedback, and there was no formal discipline in her personnel file prior to her discharge from employment.

101.    On January 23, 2020, Plaintiff gave Defendants written notice via email of her impairment and health issues which were caused by the hostile and retaliatory work environment Defendants had created and/or had failed to sufficiently remediate.

102.    In response to and because of Plaintiff's January 23, 2020 notice, Defendants placed Plaintiff on punitive leave, required that she submit to a psychological examination which was invasive, inappropriate and not job-related nor consistent with business necessity and terminated her employment.

103.    Similarly situated employees were not terminated in similar circumstances; rather, they were offered modified duty or other types of reasonable accommodation(s).

104.    Defendants did not engage in the interactive process with Plaintiff, refused to make or even consider any reasonable accommodations prior to placing Plaintiff on punitive leave, and ultimately terminated Plaintiff's employment.

105.    Plaintiff continued to request reasonable accommodations and/or request that Defendants engage in the interactive process, even after her termination, but the Sheriff denied her requests.

106.    Defendants' conduct was intentional and willful and done with malice

and/or reckless indifference to Plaintiff's rights and the injuries she suffered as a result.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## CAUSE OF ACTION V -
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## 28 U.S.C. §2601
### (*Against Defendants LED, Butte-Silver Bow, the Commissioners and Does 1-10 and Sheriff Ed Lester*)

107.   Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

108.   Defendants were employers as defined by the FMLA 20 U.S.C. §2611, employed 50 or more employees for each working day of 20 or more calendar workweeks in the current or preceding calendar year, and/or acted, directly or indirectly in the interest of the employer.

109.   Plaintiff was employed by Defendants for at least 12 months and worked at least 1,250 hours in the 12 months preceding her request for leave under the FMLA.

110.   Plaintiff provided proper notice of her intent and need to take leave under the FMLA.

111.   In response to and because of her request for leave under the FMLA, Defendants placed Plaintiff on punitive leave, required to her to undergo a

psychological examination and then terminated her employment.

112.   The decision to place Plaintiff on punitive leave, requiring her to submit to a psychological examination and then, terminating her employment were causally related to Plaintiff's request to take FMLA leave.

113.   Plaintiff was prohibited from taking job protected leaved under the FMLA.

114.   Defendant Sheriff Ed Lester admitted that Plaintiff was denied leave under the FMLA.

115.   Sheriff Ed Lester and the other Defendants failed in their responsibility to assess Plaintiff's entitlement to FMLA leave and therefore, denied her a substantive right under the FMLA.

116.   The effect of these unlawful employment practices deprived Plaintiff of her job-protected leave under the FMLA and permanently deprived her of her employment.

117.   Defendants' conduct was intentional and willful and done with malice and/or reckless indifference to Plaintiff's rights and the injuries she suffered as a result.

   WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## CAUSE OF ACTION VII –
## INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendants LED, Butte-Silver Bow, the Commissioners and Does 1-10 and Sheriff Ed Lester)

118.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

119.    Defendants' conduct, in their employment-relationship with Plaintiff, was so outrageous and extreme that it exceeded the bounds of decency to the extent that no person, including Plaintiff, should have to endure it.

120.    As a direct and proximate result of Defendants' conduct Plaintiff suffered serious or severe emotional distress.

121.    Plaintiff's serious or severe emotional distress was a reasonably foreseeable consequence of the Defendants intentional and/or negligent conduct.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## JURY DEMANDED

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

## PRAYER

WHEREFORE, Plaintiff prays for relief as follows:

1.    Special damages, including but not limited to, past, present and future wage and benefits loss, lost earning capacity, past and future job search

costs, past and future medical expenses, and other special damages in a sum to be determined according to proof;

2.      For general damages including, but not limited to, pain and suffering, psychological injury, emotional distress, and harm to reputation;

3.      Punitive damages and exemplary damages to the extent permitted by law;

4.      For reasonable attorney fees pursuant to 42 U.S.C. §1988 (b), and as otherwise permitted by law;

5.      Pre-judgment and post-judgment interest and experts' witness fees and other costs; and

7.      Such other relief as this Court deems just and appropriate.


Dated: November 18, 2020                  THE RABB LAW FIRM, PLLC


                                          /s/ Lana R. Rupprecht
                                          Lana R. Rupprecht
                                          *Attorneys for Plaintiff*