# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| RHONDA STATON,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF BUTTE-SILVER BOW; BUTTE-SILVER BOW COUNTY SHERIFF ED LESTER, in his individual capacity; and DOES 1-10,<br><br>Defendants. | CV 20-60-BU-BMM<br><br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

## INTRODUCTION

Defendants City and County of Butte-Silver Bow and Butte-Silver County Sheriff Ed Lester (collectively "Defendants") have filed a Motion for Partial Summary Judgment. (Doc. 33.) Plaintiff Rhonda Staton ("Staton") opposes this motion. (Doc. 56.) The Court held a hearing on this motion on September 7, 2022. (Doc. 61.)

## FACTUAL AND LEGAL BACKGROUND

Staton, a former police detective in Butte, has brought multiple civil rights and labor claims against her former employer. She worked for the Butte-Silver

1

Bow Law Enforcement Department ("LED") for over eighteen years. Staton spent most of that time as a detective. Staton claims that she experienced years of workplace harassment and discrimination, on the basis of her gender, age, and disability. (Doc. 7 at 7–13.) This alleged harassment included the following actions: subjecting Staton to verbal abuse, threats, and intimidation; putting tampons and other "offensive items targeting [Staton's] gender" in her mailbox; displaying mocking photos of her in the office; making a false complaint regarding her work on a case; assigning her undesirable shifts and work; excluding her from meetings and work events; prohibiting her, and no one else, from speaking privately with anyone in her office with the door closed; and threatening her with demotion. (*Id.* at 7–8, 10–11.)

Staton submitted at least six internal complaints about the harassment and hostile work environment to LED Human Resources starting in 2018. (*Id.* at 7–13.) Staton claims that she began to experience targeted retaliation after her supervisors and co-workers became aware of one of these complaints. (*Id.* at 10–11.) LED took no action after investigating Staton's initial complaints. (*Id.* at 12.) Staton submitted additional complaints in December 2019 and January 2020. Staton claims that LED again never properly investigated these complaints. (*Id.* at 14.)

Staton requested Family Medical Leave Act ("FMLA") leave paperwork on January 20, 2020. (*Id.* at 13.) LED sent Staton a letter on January 27, 2020,

regarding her FMLA eligibility. LED attached the required certification paperwork to submit an FMLA leave request. (*Id.*) Sheriff Lester met with Staton on February 19, 2020. (*Id.* at 14.) Sheriff Lester informed Staton in this meeting that she would begin administrative leave as of February 21, 2022. (*Id.*) Sheriff Lester also required Staton to submit to an evaluation with a psychologist hired by LED. (*Id.*)

Sheriff Lester ordered Staton to resign in July 2020. (*Id.* at 15.) Sheriff Lester warned Staton that LED would fire her and seek recission of a training certification if she did not resign. (*Id.*) Staton responded with an opposition letter in early August 2020. (*Id.* at 16.) Staton then filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Montana Human Rights Bureau ("MHRB") alleging discrimination, harassment, and retaliation. (*Id.*) Sheriff Lester terminated Staton's employment on August 24, 2020, twenty days after EEOC notified Defendants of Staton's claim. (*Id.*) After her termination, Staton filed two more dual EEOC-MHRB claims, in September and October 2020. (*Id.* at 4–5.)

Staton filed this lawsuit in federal court in November 2020. (Doc. 1.) Staton initially sued Butte-Silver Bow Law Enforcement Department, the Board of County Commissioners for Butte-Silver Bow County, and Does 1–10 (unnamed LED colleagues), in addition to Defendants. Following the voluntary dismissal of

the other defendants, only Defendants City and County of Butte-Silver Bow and Sheriff Lester remain. (Doc. 28; Doc. 27 at 2.)

Staton's claims against Defendants comprise discrimination, hostile work environment/harassment, and retaliation under the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and Montana Human Rights Act (Mont. Code Ann. § 49-2-301, 303(1)(a)); disability discrimination under the Americans With Disabilities Act (28 U.S.C. §12101 *et seq.*) and Montana Human Rights Act (Mont. Code Ann. § 49-4-101); violations of the Family and Medical Leave Act ("FMLA") (28 U.S.C. § 2601 *et seq.*); and negligent and/or intentional infliction of emotional distress under Montana state law. (Doc. 7 at 17–27, Causes of Action I–VII.)

Defendants now move for (1) partial summary judgment on Staton's FMLA claim, and (2) dismissal of Sheriff Lester from the case on the basis of immunity as a public official acting within the scope of his employment. (Doc. 34 at 2.)

## LEGAL STANDARDS

Summary judgment proves appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## DISCUSSION

A.   **Staton's FMLA claim.**

Defendants argue that Staton's FMLA claim fails for two independent reasons: that (1) Staton cannot establish a prima facie FMLA claim; and (2) that Staton was not prejudiced by not being placed on FMLA leave. (*Id.* at 4–5.) Staton claims that disputed issues of material fact remain regarding both whether Defendants interfered with her FMLA rights and whether that interference prejudiced her. (Doc. 56 at 5.)

The FMLA request process requires claimants to provide their employer with appropriate notice of their intent to go on FMLA leave. 29 C.F.R. § 825.303. The employer then must provide the employee with certification paperwork for the employee's medical provider to complete. *Id.* § 825.305(b). Employees must return this certification paperwork within fifteen days after the employer provides them with the documents. *Id.* § 825.305(c). The federal regulations require employers to advise employees of the "anticipated consequences of an employee's failure to provide adequate certification." *Id.* § 825.305(d).

To prevail on an FMLA interference claim, a plaintiff first must prove that their employer violated the FMLA by interfering with, restraining, or denying the

5

exercise or the attempt to exercise the plaintiff's FMLA rights. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The plaintiff then must demonstrate that the employer's FMLA violation caused them prejudice. *Jergens v. Marias Med. Ctr.*, No. 21-35688, 2022 WL 1577804, at *1 (9th Cir. May 19, 2022) (citing *Ragsdale*, 535 U.S. at 89). Employers' liability extends to compensation and benefits lost "by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I); to other monetary losses sustained "as a direct result of the violation," *id.* § 2617(a)(1)(A)(i)(II); and to "appropriate" equitable relief, including employment, reinstatement, and promotion, *id.* § 2617(a)(1)(B). *Ragsdale*, 535 U.S. at 89. The plaintiff in *Jergens* received paid leave under her employer's policy. 2022 WL 1577804, at *1. The Ninth Circuit concluded that the plaintiff had failed to show prejudice to her FMLA rights because the leave she received proved "more generous" than her FMLA leave would have been. *Id.*

Staton argues that Defendants interfered with her FMLA rights. Staton requested FMLA leave paperwork from Defendants on January 20, 2020. Defendants provided Staton with this paperwork on week later, on January 27, 2020. The cover letter for this FMLA paperwork failed to advise Staton of the "anticipated consequences" if she neglected to "provide adequate certification." 29 C.F.R. § 825.305(d). The cover letter states that Staton "*may* return these [forms] . . . within 15 days. If you need more time to get the forms completed, please let me

know as soon as possible." (Doc. 62 at 3.) The cover letter employs non-mandatory language ("may" rather than "must" or "shall" return). (*Id.*) It makes no mention of the fifteen-day statutory deadline for returning the FMLA certification paperwork. *Id.* The cover letter also lacks an explanation that Defendants could deny Staton's FMLA claim if she failed to provide a certification or submitted the certification after the deadline. *Id.*

Defendants may have violated the FMLA. Staton fails to identify, however, any prejudice resulting from this alleged violation. Staton might have been able to demonstrate prejudice had she timely submitted the FMLA certification paperwork or had Defendants denied FMLA leave to Staton. Staton instead never returned the certification paperwork to request FMLA leave. (Doc. 34 at 4.) Staton received this paperwork on January 27, 2020. (Doc. 62 at 3.) Defendants placed Staton on paid administrative leave beginning on February 21, 2020, seven days after the close of Staton's fifteen-day window to return the FMLA certification paperwork. (Doc. 34 at 4.) Defendants never denied Staton FMLA leave. (*Id.*) As in *Jergens*, Staton received paid leave from her employer. 2022 WL 1577804, at *1. This paid leave proved "more generous" than Staton's FMLA leave would have been. *Id.* Staton's FMLA claim fails because she has not shown prejudice resulting from Defendants' alleged FMLA violation. *Id.* Summary judgment in favor of Defendants on Staton's FMLA claim proves appropriate.

**B.     Sheriff Lester's claim of official immunity.**

Defendants assert that Staton's claims against Sheriff Lester should be dismissed with prejudice under Mont. Code Ann. § 2-9-305 ("Section 2-9-305"). (Doc. 16 at 42.) Staton counters that Defendants have denied that Sheriff Lester acted within the course and scope of his employment related to the allegations in the First Amended Complaint. (Doc. 56 at 5–6.) This claim lacks factual support.

Staton explicitly states in her First Amended Complaint that "[a]t all relevant times, Sheriff Ed Lester acted . . . within the scope of his employment." (Doc. 7 at 3.) Defendants' Answer "affirmatively state[s] that Sheriff Ed Lester was acting within the scope of his authority" during the relevant time period. (Doc. 16 at 4, 41–42.) Staton cannot create a material dispute as to the nature and scope of Sheriff Lester's conduct by mischaracterizing Defendants' Answer.

Staton argues next that Section 2-9-305 does not apply to her claims against Sheriff Lester. According to Staton, Section 2-9-305 affords immunity only for certain torts. (Doc. 56 at 6–7.) Staton relies on definitions of "claim," "personal injury," and "property damage" found in Mont. Code Ann. § 2-9-301. (*Id.*) This interpretation lacks merit.

Montana state law unambiguously bars individual suit against public officials for conduct undertaken in the course of their employment. Mont. Code Ann. § 2-9-305. The plain text of Section 2-9-305 provides that a governmental

entity must defend and indemnify an employee "in any non-criminal action brought against the employee." *Id.* § 2-9-305(2). The statute imposes a "complete bar" to recovery against an employee whose alleged "negligence or wrongful act, error, omission, or other actionable conduct gave rise to the claim." *Id.* § 2-9-305(5).

Decisions of the Montana Supreme Court confirm the broad scope of Section 2-9-305. A property owner brought an action in *Kiely Construction* against the city of Red Lodge and individual city council members challenging the denial of a subdivision application. *Kiely Constr. L.L.C. v. City of Red Lodge*, 57 P.3d 836, 841 (Mont. 2022). *Kiely Construction* determined that Section 2-9-305 prevents plaintiffs "from recovering from *both* the governmental entity and the individuals acting on behalf of that entity for the same conduct" and dismissed the individual public official defendants based on immunity grounds. *Id.* at 854–55 (emphasis in original).

Similarly, in *Baumgart v. State Department of Commerce et al.*, a former state employee brought a wrongful discharge case against both the Department of Commerce ("DOC") and its director for actions allegedly undertaken within the course and scope of the director's employment. 332 P.3d 225, 226 (Mont. 2014). *Baumgart* relied upon its prior decision in an age discrimination suit brought by a former employee against the county and the county attorney. *Id.* (citing and

quoting *Kenyon v. Stillwater Cnty.*, 835 P.2d 742, 744 (1992), *overturned in part on other grounds*, *Heiat v. Eastern Mont. College*, 912 P.2d 787 (1996)). *Kenyon* determined that the county attorney enjoyed "clear" immunity under Section 2-9-305 as "an agent of Stillwater County acting within the scope of his authority." 835 P.2d at 745. *Baumgart* followed *Kenyon* and affirmed the dismissal of the individual defendant on the basis of Section 2-9-305 immunity. *Baumgart*, 332 P.3d at 230 (citing *Kenyon*, 835 P.2d at 745).

As in *Kiely Construction* and *Baumgart*, Section 2-9-305 bars Staton's suit against Sheriff Lester, who allegedly acted within the course and scope of his employment, thereby warranting his dismissal from the case. *Kiely Constr.*, 57 P.3d at 841; *Baumgart*, 332 P.3d at 226.

## ORDER

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 33) is **GRANTED.** Staton's FMLA claim is **DISMISSED.** Sheriff Ed Lester is **DISMISSED** from the action.

**IT IS FURTHER ORDERED** that the parties will file a Joint Discovery Plan on or before October 5, 2022. The parties shall appear before the undersigned by telephone on October 11, 2022 at 1:30 p.m. The call-in number is as follows 877-402-9753; access code: 5136505.

DATED this 28th day of September, 2022.

_____

Brian Morris, Chief District Judge
United States District Court