**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| RHONDA STATON,<br><br>                              Plaintiff,<br><br>vs.<br><br>CITY & COUNTY OF BUTTE-SILVER<br>BOW and DOES 1-10,<br><br>                              Defendants. | **CV-20-60-BU-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Defendant City and County of Butte-Silver Bow ("BSB") has filed a motion in limine to exclude evidence at trial. (Doc. 89.) Plaintiff Rhonda Staton ("Staton") opposes the motion. (Doc. 106.)

## BACKGROUND

Staton worked for the Butte-Silver Bow Law Enforcement Department ("LED") from December 10, 2001, until August 24, 2020. (Doc. 116, ¶ 1.) Staton has brought the following claims against BSB relating to her employment and termination therefrom: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Montana Human Rights Act ("MHRA"); (2) hostile work environment and harassment in violation of Title VII and the MHRA; (3) retaliation in violation of Title VII and the MHRA; (4) disability discrimination

1

in violation of the Americans with Disabilities Act ("ADA") and the MHRA; (5) violation of the Family and Medical Leave Act ("FMLA"); (6) infliction of emotional distress ("IED"); and (7) punitive damages. (Doc. 7 at 17–28.) The Court granted summary judgment to BSB on Staton's FMLA claim, IED claim, and punitive damages claim. (Doc. 63 at 7; Doc. 160 at 37.) For further background, the Court refers to the factual background set forth in the Court's order filed on November 9, 2023, (Doc. 160) concerning BSB's motion for summary judgment.

## LEGAL STANDARD

Motions in limine serve as procedural mechanisms "to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The decision on a motion in limine is committed to the district court's discretion, including the decision of whether to reserve ruling until trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Motions in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Lab., Inc.*, CV-07-170-BLG-RFC, 2010 U.S. Dist. LEXIS 113888, at *1 (D. Mont. Oct. 26, 2010).

A court will grant a motion in limine only if "the evidence is 'inadmissible on all potential grounds.'" *Frost v. BNSF Ry. Co.*, 218 F.Supp.3d 1122, 1133 (D. Mont. 2016) (quoting *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888, at *1). "[D]enial of a motion in limine does not necessarily mean that all evidence

contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n*, No. CV 19-6-BLG-TJC, 2021 U.S. Dist. LEXIS 98985, at *25 (D. Mont. May 25, 2021) (internal quotations omitted). Evidentiary rulings must be deferred until trial if evidence fails to meet the "inadmissible on all potential grounds standard." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2. Deferring rulings on motions in limine allows the Court to place "questions of foundation, relevancy and potential prejudice . . . in proper context." *Id.* (internal quotations omitted). A court may alter its ruling on a motion in limine if trial brings to light facts that the court failed to anticipate in its earlier ruling. *Bensimon*, 172 F.3d at 1127.

## DISCUSSION

BSB asks the Court to exclude seven categories of evidence in its first motion in limine. (Doc. 90 at 6.) The Court will consider each category of evidence in turn.

### I.   Arbitrator's decision concerning Staton's union grievance

BSB and the Butte Police Protective Association engaged in arbitration over allegations that BSB violated the union's collective bargaining agreement when it terminated Staton. (Doc. 90 at 8.) The arbitrator found that BSB failed to comply with a particular provision of the collective bargaining agreement. (*Id.*) BSB petitioned a state district court to vacate the arbitrator's decision. (*Id.* at 7.) BSB

argues that admitting the evidence would place undue weight on the arbitrator's findings. BSB contends that the arbitrator's findings prove only minimally relevant to this litigation. (*Id.* at 8.) Staton argues that the arbitrator's decision proves relevant as to whether Staton's termination was supported by just cause. (Doc. 106 at 3.) Staton further argues that the motion in limine proves premature, because the state district court has not yet rendered a decision confirming or vacating the arbitration award. (*Id.* at 4.)

The Court lacks information about whether the state district court has rendered a decision confirming or vacating the arbitrator's decision. The Court also lacks sufficient information about how the parties would use the arbitrator's decision at trial. The Court finds it imprudent to rule on the exclusion of this evidence without a clear understanding of what portions of the arbitrator's decision may be at issue and in what context the decision may be raised. The Court lacks sufficient information about the proposed evidence to find that the evidence proves "inadmissible on all potential grounds." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888, at *1. BSB may challenge the admissibility of the arbitrator's decision again at the final pretrial conference or trial when questions of relevancy and potential prejudice can be placed in the proper context. *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2.

4

## II.     Evidence or argument regarding events alleged to have occurred more than 180 days before Staton filed her EEOC charge

Title VII requires claimants making a claim under Title VII to file a charge of discrimination "within 180 days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The time period for filing the EEOC charge widens to 300 days if the claimant initially institutes proceedings with a state agency. *Id.* BSB relies on this statutory time period to argue that the Court should exclude any reference to acts that occurred more than 180 days before Staton filed her EEOC charge. (Doc. 90 at 9.)

BSB points to several alleged acts that fall outside this time period. These acts include the placement of tampons in Staton's mailbox, the pointing of a laser at Staton's chest, and the drawing of penises on her vehicle. (*Id.* at 10.) BSB contends that these events fall outside the 180-day period before her EEOC charge, and, thus, prove unactionable as discrete retaliatory or discriminatory acts. (*Id.* at 11.) BSB further contends that Staton may not use the alleged acts to provide background for her discrimination claim or as evidence of a hostile work environment. (*Id.* at 12– 13.) BSB reasons that Staton has failed to prove that the acts were committed because of her status as a woman and thus, the acts cannot serve as evidence of a hostile work environment. (*Id.* at 13.)

The U.S. Supreme Court addressed "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside [the EEOC] statutory

5

time period" in *Nat'l R.R. Passenger Corp. v. Morgan*. 563 U.S. 101, 104 (2002). The plaintiff in *Morgan* had sued his employer for racial discrimination, retaliation, and a hostile work environment. *Id.* Many of the discriminatory acts alleged by the plaintiff had occurred more than 300 days before the plaintiff had filed his EEOC charge. *Id.* at 106. The U.S. Supreme Court determined that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

The U.S. Supreme Court cited *United Airlines v. Evans* for an example of a time-barred discriminatory act. *Morgan*, 536 U.S. at 112 (citing *United Airlines v. Evans*, 431 U.S. 553 (1977). In *Evans*, the employer maintained a policy against married female flight attendants and forced the plaintiff to retire after she married. 431 at 554. The employer later rehired the plaintiff and treated her as a new employee and refused to reinstate her prior seniority status. *Id.* at 555–56. The U.S. Supreme Court rejected the employee's claim of discrimination regarding the seniority system. *Id.* at 558–59. The U.S. Supreme Court noted that the seniority system gave "present effect to a past act of discrimination," but determined that the system itself functioned neutrally. *Id.* at 558. The past act of discrimination proved untimely and could not support a present claim for discrimination against an otherwise neutral employment practice. *See id.* at 558–59.

6

The U.S. Supreme Court in *Morgan* distinguished between an act being actionable and an act being admissible. The U.S. Supreme Court determined that discriminatory acts outside the 180-day or 300-day period could not justify filing a charge for an employment practice "that was not independently discriminatory." 536 U.S. at 113. The U.S. Supreme Court noted, however, that nothing in the statute prohibits employees "from using the prior acts as background evidence in support of a timely claim." *Id.* The U.S. Supreme Court also distinguished between claims alleging discrimination or retaliation and claims alleging a hostile work environment.

The U.S. Supreme Court recognized that hostile work environment claims "involve[] repeated conduct" and "are based on the cumulative affect [sic] of individual acts." *Id.* at 115. The U.S. Supreme Court determined that the ongoing nature of the hostile work environment claim warranted a different interpretation of the timely filing requirement:

> It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117. Accordingly, the plaintiff's proposed evidence that managers had used racial epithets, made racial jokes, and performed racially derogatory acts proved

admissible despite many of the acts occurring outside the plaintiff's 300-day EEOC filing period. *Id.* at 120–21.

BSB correctly notes that several of the events cited by Staton as evidence of gender discrimination and gender-based animus occurred more than 180 days before Staton filed her EEOC charge. These events would not be actionable as discrete acts of discrimination or retaliation. These events can provide background, however, to support her timely claims related to her referral for the fitness for duty evaluation, her placement on administrative leave, and her termination. These events also can serve as part of her claim for a hostile work environment. BSB argues that the events prove too dissimilar to support the hostile work environment claim. BSB contends that different individuals committed the acts and that the acts occurred across too wide of a time span. Besides Captain Holland asking Staton on a date in 2004 or 2005, all the events occurred after Staton had joined the detective division. (Doc. 90 at 10.) In fact, many of the events occurred during and leading up to the time in which Staton filed her HR complaint asserting a hostile work environment.

Staton alleges that someone drew penises on Staton's work vehicle, that someone pointed a laser at her breasts, that coworkers ignored her at a crime scene, and that someone placed tampons in her work mailbox. Staton also alleges that BSB required Staton to reorganize her case files and work through her cases with a senior officer while other male detectives that were behind on their caseloads received no

similar corrective action. The Court cannot say that these acts "are not part of the same actionable hostile environment claim." *Morgan*, 536 U.S. at 121. Finally, Staton alleges that a supervisor excessively corrected her report in red pen and displayed it on her door where others could see it after she filed her HR complaint. "[W]hat might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned, humiliated, or intimidated on account of her gender." *Christian v. Umpqua Bank*, 984 F.3d 801, 810 (9th Cir. 2020).

The request for a date from Captain Holland appears unrelated to the hostile work environment claim and discrimination claim. The request for a date appears to be an isolated incident nearly 14 years before any other conduct of which Staton complains occurred. The Court will grant BSB's motion to exclude evidence that Captain Holland asked Staton on a date in 2004 or 2005. The Court will deny at this time BSB's motion to exclude evidence of the other events cited that occurred more than 180 days before Staton filed her EEOC charge. BSB may raise objections at the time of trial to Staton's attempts to introduce evidence not relevant to her claims.

### III.   Testimony or argument about whether Staton proved fit for duty as a law enforcement officer at the time of her termination

BSB argues that the Court should preclude Staton from introducing any evidence that she proved fit for duty at the time of her termination. BSB cites Staton's admission that her March 2020 fitness for duty evaluation (FFDE) scores

reflect an individual unfit for duty as a law enforcement officer and her admission in February that she was "barely functioning." (Doc. 90 at 15.) BSB further contends that Staton lacks any expert testimony that she proved fit for duty at the time of her termination in August. (Doc. 119 at 6.)

BSB cites no rule to warrant the exclusion of evidence that Staton proved fit for duty at the time of her termination in August of 2020. BSB appears to argue that such evidence needs to be supported by expert testimony and that Staton has failed to present expert testimony to that effect. (Doc. 119 at 6.) The Court already has granted BSB's motion to exclude the supplemental opinion of Dr. Nicoletti, in which Dr. Axelrod opined that the raw scores from Dr. Patenaude's evaluation of Staton in October of 2020 reflect a person fit for duty. (Doc. 163 at 9–11.) The Court finds no grounds, however, for precluding Staton from asking Dr. Patenaude about her raw scores and whether those scores reflect someone psychologically fit for duty as a law enforcement officer. The Court also finds no grounds to exclude testimony from Staton about her own perceived mental health and any steps taken to improve her mental health. The Court will deny this motion in limine at this time. BSB may raise objections to specific evidence at the time of trial.

## IV.  Testimony regarding alleged conduct involving former BSB employees who are not parties to the case

BSB contends that Staton must be prohibited from presenting evidence of alleged discrimination or hostility toward other female employees. (Doc. 90 at 17.)

10

BSB cites Fed. R. Evid. 404(b) as grounds for excluding evidence about alleged harassment of other female employees. BSB argues that Staton offers evidence of the alleged harassment to suggest BSB acted in conformity therewith in allegedly harassing Staton. (*Id.* at 20.) Staton counters that the evidence BSB seeks to exclude about alleged harassment of other female employees may be inadmissible for certain purposes but proves admissible for other purposes. (Doc. 106 at 10.)

Rule 404(b) of the Federal Rules of Evidence prohibits the admission of "[e]vidence of any other crime, wrong, or act" for the purpose of "prov[ing] a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of a prior bad act may be admissible for other purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Ninth Circuit noted in *EEOC v. Farmer Bros. Co.* that "evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination" because "hostility against women" motivates the employer's employment decisions. 31 F.3d 891, 898 (9th Cir. 1994).

The Ninth Circuit determined again in *Heyne v. Caruso* that evidence of an employer's or supervisor's sexual harassment of other female employees may be used to prove the employer's motive or intent behind adverse employment actions. 69 F.3d 1475, 1480 (9th Cir. 1995). Other courts have noted the use of prior alleged

discriminatory acts "to show that the work environment was objectively hostile, that [d]efendants knew it was, and that despite this knowledge, they failed to take remedial action." *Sanders v. Univ. of Idaho, Coll. of Law*, 634 F. Supp. 3d 923, 930 (D. Idaho Oct. 5, 2022).

BSB contends that any alleged harassment of other employees proves irrelevant. BSB admits that such discrimination may prove relevant "if Staton were trying to prove she was terminated because she is female" but is irrelevant here where Staton claims retaliation motivated her termination. BSB's argument proves unavailing. Staton has made a claim of gender discrimination and a hostile work environment based on adverse employment actions including her referral for an FFDE and placement on administrative leave. Evidence of discrimination against other female BSB employees may not make more or less probable whether BSB retaliated against Staton for protected activity. Evidence of discrimination against other female BSB employees would make more or less probable whether gender-based animus motivated the adverse employment actions complained of in Staton's gender discrimination and hostile work environment claim. *Heyne*, 69 F.3d at 1480. BSB's argument that alleged discrimination against other BSB employees proves irrelevant fails to the extent that the discrimination against other BSB employees may demonstrate gender-based animus.

BSB also contends that Staton has failed to establish that the prior allegedly discriminatory acts meet the requirements for admission under Fed. R. Evid. 404(b)(2). The Ninth Circuit set forth four requirements for admission of "other bad act" evidence under Fed. R. Evid. 404(b):

> (1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged.

*Johnson v. Fed. Express Corp.*, No. CV-14-02428-PHX-DGC, 2016 U.S. Dist. LEXIS 112993, at *2 (D. Ariz. Aug. 24, 2016) (quoting *Duran v. City of Maywood*, 221 F.3d 1127, 1132–33 (9th Cir. 2000)). Courts also must consider whether the conduct involved the same actors, temporal and geographic proximity between the other acts and the claimant's alleged discrimination, whether decisionmakers knew of the other employment decisions or conduct, whether employees proved similarly situated, and the nature of each employee's allegations. *Johnson*, 2016 U.S. Dist. LEXIS 112993, at *2 (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 598–99 (6th Cir. 2012)).

The Court remains unclear on the precise evidence of discrimination against other BSB employees that Staton may seek to admit. BSB presents excerpts from Staton's Amended Complaint, deposition testimony, and discovery responses. It remains unclear, however, the form and content of the proposed evidence. For

example, Staton testified in her deposition that Sharman Hock received poor treatment from a supervisor. The Court remains uncertain whether Staton plans to introduce Sharman Hock as a witness or whether Sharman Hock's testimony would demonstrate a gender-based animus. The Court lacks sufficient information about the proposed evidence to find that the evidence proves "inadmissible on all potential grounds." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888, at *1.

The Court denies BSB's motion to exclude all evidence of alleged discrimination against other BSB employees. The Court instructs Staton to file a memorandum outlining the prior alleged acts of discrimination that Staton seeks to introduce and how such acts meet the requirements for admissibility under Fed. R. Evid. 404(b) as established in *Duran. Mendoza v. Rio Rico Med. & Fire Dist.*, No. CV-18-00479-TUC-CKJ, 2021 U.S. Dist. LEXIS 231102, at *14–15 (D. Ariz. November 30, 2021). Staton shall have 21 days after the entry of this order to file the memorandum. BSB can raise new evidentiary challenges to this proposed evidence based upon the memorandum or at the final pretrial conference or trial when questions of relevancy, potential prejudice, and the purpose of the evidence can be placed in the proper context.

## V. Evidence or argument that alleged workplace harassment caused or contributed to Staton's PTSD

BSB argues that the Court should preclude any evidence that the alleged workplace discrimination, retaliation, and harassment caused Staton to suffer mental

14

health issues and contributed to her PTSD. (Doc. 90 at 20.) BSB contends that Staton has failed to establish the causal link between the alleged conduct and her PTSD to a reasonable degree of certainty. (*Id.*) BSB cites one portion of the deposition of Lori Stiffler, Staton's counselor, to support its argument that Stiffler cannot provide adequate testimony as to causation.

BSB asked Stiffler if she planned to testify that BSB's workplace harassment, discrimination, and retaliation caused Staton to suffer mental health issues and exacerbated her PTSD. (Doc. 90-5 at 3.) Stiffler responded affirmatively. (*Id.*) BSB then asked Stiffler to describe the testimony that she intended to provide regarding those issues. (*Id.*) Stiffler responded "I mean, clearly there was a history of trauma. Any perceived threat, you know, from the earliest initial traumatic experiences could have exacerbated/compounded, you know, any of the trauma symptoms." (*Id.*) BSB contends that Stiffler's use of the word "could" proves insufficient to meet the "more likely than not" standard for medical testimony.

BSB highlights one sentence in the deposition of Stiffler in support of its argument. BSB ignores the statement by Stiffler that her treatment sessions with Staton formed the basis for her testimony. BSB failed to question Stiffler any further about her opinion or the grounds supporting it. The Court cannot say from the one sentence cited by BSB that Stiffler's testimony as to causation proves "inadmissible on all potential grounds." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888

at *2. Accordingly, the Court denies BSB's motion to exclude any testimony that the alleged harassment, discrimination, and retaliation caused Staton to suffer mental health issues and contributed to her PTSD. BSB may raise this issue again at the final pretrial conference or trial when questions of relevancy, potential prejudice, and foundation can be placed in the proper context. *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2.

## VI.   Evidence regarding Staton's lost wages and benefits

BSB cites Rules 401 and 403 of the Federal Rules of Evidence as grounds for excluding evidence of Staton's lost wages and benefits. BSB alleges that Staton failed to mitigate her damages by choosing not to pursue comparable employment in law enforcement following her termination. BSB contends that Staton's failure to mitigate renders her lost wages and benefits unrecoverable under state and federal law. BSB argues that Staton's failure, in turn, renders irrelevant any lost wages or benefits claimed by Staton.

Section 2000e-5(g)(1) of Title 42 of the U. S. Code permits a court to award back pay upon a finding that an employer intentionally engaged in an unlawful employment practice. The statute provides, however, that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1). This provision of the statute imposes an affirmative duty on the Title

VII claimant to mitigate damages. *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1518 (9th Cir. 1989).

The employer bears the burden of proving that the claimant failed to mitigate damages. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978) (citing *Kaplan v. Intern. Alliance of Theatrical, etc.*, 525 F.2d 1354, 1363 (9th Cir. 1975)). The defendant must prove the following elements to meet their burden: "(1) that the damage suffered by plaintiff could have been avoided, I. e. [sic] that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *Sias*, 588 F.2d at 696.

BSB has argued that Staton failed to seek comparable employment after her termination. Staton rejected BSB's offer of employment as an animal control officer. (Doc. 90-6 at 6.) The Ninth Circuit has recognized the difficult position in which an employee would be if their Title VII recovery was reduced solely because the employee refused to accept another job with the employer of which they complain. *Thorne v. El Segundo*, 802 F.2s 1131, at 1135. "[T]he employee would be constrained either to contribute by his labor to an employer who has treated him unfairly and who persists in that unfair treatment, or to take less than a whole remedy for injuries suffered." *Id.* (internal quotations omitted). BSB has failed to

demonstrate that refusing to accept a position as an animal control officer with BSB constitutes a willful loss of earnings.

BSB notes that Staton also failed to seek employment outside BSB. Staton admits that she failed to seek employment in law enforcement or private security. (*Id.* at 3.) Staton also failed to seek employment as a courtroom security officer. (*Id.* at 4.) Staton admits that she quit looking for employment after accepting a job as a part-time casino runner. (*Id.* at 6.) This evidence may prove sufficient for a jury to find in favor of BSB that Staton failed to mitigate her damages. Even if a jury were to make a finding that Staton had failed to mitigate her damages, however, that finding would not necessarily warrant the exclusion of any evidence related to Staton's lost wages and benefits. Title VII's statutory scheme expressly contemplates that any interim earnable amounts "shall operate to reduce the back pay." 42 U.S.C. § 2000e-5(g)(1). A failure to mitigate does not bar completely the recovery of lost wages.

The Ninth Circuit has found justification for not awarding backpay where the evidence demonstrates a "willful loss of earnings." *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980). In *Sangster*, the employer denied the employee's application to transfer from stewardess supervisor to stewardess because of the employee's marital status. *Id.* at 866. The employee then quit and remained unemployed for eight years. *Id.* The employee never applied to other airlines,

18

registered at an employment agency, or even applied for unemployment benefits. *Id.* at 866 n.2. The Ninth Circuit determined that "denial of back pay under the circumstances would not frustrate Title VII's remedial purposes." *Id.* at 868.

Staton's conduct does not rise to a willful loss of earnings. Staton admittedly never sought employment in law enforcement, private security, or in courtroom security after her termination. BSB has failed to show, however, that such jobs proved available in her area, especially during the COVID-19 pandemic. Staton obtained employment within a year of her termination and alleges that she inquired with at least eleven employers. (Doc. 106 at 12.) Staton's alleged failure to mitigate stands only as a possible theory for reducing Staton's damages for lost wages and benefits, not for excluding any evidence on those damages. The Court denies BSB's motion to exclude any evidence regarding lost wages or benefits.

BSB also contends that Staton should be precluded from recovering the amount of insurance premiums that BSB would have paid on her behalf had she not been terminated. The Ninth Circuit has recognized that "the proper measure of lost health or life insurance benefits is 'the amount of any actual expenses incurred' by the employee." *Farmer Bros. Co.*, 31 F.3d at 902 (quoting *Galindo v. Stoody Co.*, 793 F.2d 1502, 1517 (9th Cir. 1986)). As such, the Court grants BSB's motion to preclude Staton from presenting evidence of damages for insurance premiums that BSB would have paid on Staton's behalf. Staton remains limited to presenting

19

evidence of actual expenses that she incurred to procure health or life insurance benefits.

## VII.   Undisclosed expert opinions and testimony

The Court addressed and granted this motion in limine at the hearing. Neither party will be permitted to introduce testimony from undisclosed experts. The Court further has addressed Staton's late supplement to her disclosure of experts and the consequences associated therewith. The Court refers to that prior order for any further discussion. (Doc. 163.)

## CONCLUSION

BSB has demonstrated that evidence of the insurance premiums that BSB would have paid on Staton's behalf proves inadmissible. BSB also has shown that Captain Holland asking Staton out on a date nearly twenty years ago proves irrelevant, and, thus, inadmissible. The Court already addressed undisclosed expert testimony at the hearing on BSB's motion in limine and again in its order on BSB's motion to exclude Staton's supplemental expert disclosures. (Doc. 163.) BSB has failed to make the necessary showing regarding the other evidence that it seeks to exclude. Finally, the Court reminds the parties that "denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is

unable to determine whether the evidence in question should be excluded."
*Ducheneaux*, 2021 U.S. Dist. LEXIS 98985, at *25 (internal quotations omitted).

## ORDER

Accordingly, **IT IS ORDERED** that BSB's Motion in Limine (Doc. 89) is

**GRANTED, in part, and DENIED, in part,** as follows:

1. BSB's motion to exclude the arbitrator's decision is **DENIED**.

2. BSB's motion to exclude evidence that Captain Holland asked Staton on a date in 2004 or 2005 is **GRANTED**.

3. BSB's motion to exclude evidence of the other events cited in BSB's motion that occurred more than 180 days before Staton filed her charge with the EEOC is **DENIED**.

4. BSB's motion to exclude any assertion that Staton proved fit for duty at the time of her termination is **DENIED**. The Court incorporates, however, its prior ruling on BSB's motion to exclude Staton's supplemental expert disclosures. (Doc. 163.)

5. BSB's motion to exclude evidence of alleged discrimination and harassment against other BSB employees is **DENIED**. Staton must file a memorandum outlining the prior alleged acts of discrimination or harassment that Staton seeks to introduce and how such acts meet the requirements established in *Duran* for admissibility under Fed. R. Evid.

404(b). **Staton must file the memorandum within 21 days after the entry of this order**.

6.  BSB's motion to exclude any testimony that the alleged harassment, discrimination, and retaliation caused Staton to suffer mental health issues and contributed to her PTSD is **DENIED**.

7.  BSB's motion to exclude any evidence regarding lost wages or benefits is **DENIED**.

8.  BSB's motion to preclude Staton from presenting insurance premiums that BSB would have paid on Staton's behalf as evidence of her damages is **GRANTED**. Staton is limited to presenting evidence of actual expenses that she incurred to procure health or life insurance benefits.

9.  BSB's motion to exclude undisclosed expert testimony is **GRANTED**. The Court incorporates, however, its prior ruling on BSB's motion to exclude Staton's supplemental expert disclosures. (Doc. 163.)

Dated this 29th day of November, 2023.

Brian Morris, Chief District Judge
United States District Court