## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| RHONDA STATON,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF BUTTE-SILVER BOW,<br><br>Defendant. | **No. CV-20-60-BU-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

The Court held a jury trial in this matter from February 12, 2024, to February 16, 2024. (Doc. 221; Doc. 225; Doc. 228; Doc. 229; Doc. 234.) The jury found in favor of Defendant City and County of Butte-Silver Bow ("BSB") on Plaintiff Rhonda Staton's claims for hostile work environment and disability discrimination. (Doc. 241 at 1–2.) The jury rendered a verdict in favor of Staton on Staton's retaliation claim. (*Id.* at 1.) The jury awarded Staton $349,000 in damages. (*Id.* at 3.) BSB made an oral motion for judgment as a matter of law at the close Staton's case. (Doc. 229.) The Court denied BSB's motion. (Doc. 234.) BSB filed a renewed

motion for judgment as a matter of law on March 11, 2024. (Doc. 261.) Staton

opposes the motion. (Doc. 274.)


**BACKGROUND**

Staton worked for BSB's Law Enforcement Department ("LED") from

December 10, 2001, until August 24, 2020. (Doc. 116, ¶ 1.)  Staton worked in the

patrol division for approximately seven years before being assigned to the detective

division on July 7, 2008. (*Id.*, ¶ 3.) Staton brought several claims against BSB

relating to her employment and termination therefrom. (Doc. 7 at 17–28.)

Staton submitted a complaint alleging harassment and hostile work

environment to BSB's Human Resources ("HR") department. (Doc. 242-3 at 2–4.)

BSB hired a third-party consultant, Michelle Edmunds ("Edmunds"), to investigate

Staton's complaint. Edmunds determined that the workplace behaviors proved

upsetting but did not rise to the level of "harassment" as defined by the Equal

Employment Opportunity Commission ("EEOC"). Staton submitted an email to HR

challenging Edmunds's investigation in January of 2020. (*Id.*, ¶ 34.)

Sheriff Ed Lester ("Sheriff Lester") met with Staton in February 2020 and

ordered Staton to go on paid administrative leave. Sheriff Lester required Staton to

submit to a psychological Fitness for Duty Evaluation ("FFDE") with Dr. George

Watson ("Dr. Watson"), a psychologist hired by LED. Dr. Watson concluded in his

April 27, 2020 report that Staton was unfit for duty. Sheriff Lester sent Staton a due process letter on July 27, 2020, notifying her of Sheriff Lester's intent to terminate her employment. (Doc. 245-1 at 3–6.) Staton responded with an opposition letter on August 3, 2020. Sheriff Lester terminated Staton's employment on August 24, 2020.

## STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure permits the Court to enter judgment as a matter of law on a claim or defense if the following elements are satisfied: (1) a party has been fully heard on an issue during a jury trial; (2) the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on an issue; and (3) the claim or defense can be maintained or defeated only with a favorable finding on that issue under the controlling law. Fed. R. Civ. P. 50(a). Stated differently, judgment as a matter of law proves appropriate "only if no reasonable jury could find in favor of the non-moving party." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006).

The standard that a party must meet to overturn a jury's verdict proves very high. *Costa v. Desert Palace*, 299 F.3d 838, 859 (9th Cir. 2002). The Court may not substitute its "view of the evidence for that of the jury" nor may the Court "make credibility determinations." *Id.* (internal quotations omitted). "[T]he court must draw all reasonable evidentiary inferences in favor of the non-moving party." *Id.*

## DISCUSSION

3

BSB contends that the evidence Staton presented at trial proved insufficient to support a verdict in favor of Staton on the retaliation claim. (Doc. 262 at 1.) BSB argues that Staton failed to produce sufficient evidence to establish that her filing of her HR complaint represented a "but-for" cause of Staton's termination. (Doc. 277 at 2–6.) BSB appears to assert three primary grounds to support its causation argument. BSB argues that temporal proximity proves insufficient to support a finding of causation. (Doc. 262 at 4.) BSB further contends that BSB presented legitimate, non-discriminatory reasons for terminating Staton's employment including the failed FFDE. (*Id.*) Finally, BSB argues that Staton failed to present evidence to show a retaliatory animus on the part of Sheriff Lester, who made the decision to terminate Staton. (*Id.* at 7.)

Staton counters that she provided ample evidence for a jury to conclude retaliation occurred including the following: (1) testimony that the subjects of her HR complaint were notified of the complaint and its substance; (2) testimony that Staton was placed on administrative leave four months after the filing of her complaint; (3) testimony from Sheriff Lester admitting that mental health issues prove inherent to the job; and (4) evidence of improper communication between Dr. Watson and Sheriff Lester during the FFDE process. (Doc. 274 at 4–5.)

Title VII prohibits employers from discriminating against an employee because the employee "has opposed any practice made an unlawful employment

4

practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *see also Stegall*, *v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

BSB does not dispute that Staton's filing of an internal complaint alleging a hostile work environment and disparate treatment represents an activity protected under Title VII. (Doc. 262 at 4); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (2002); *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 731 (9th Cir. 1986). BSB does not contest that Staton's termination represents an adverse employment action. (Doc. 277 at 5.) "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).

In addition to showing the adverse employment action and engagement in protected activity, "[a] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). BSB argues that Staton failed to present sufficient evidence at trial to establish a causal connection between Staton's HR complaint and her termination.

i.    **Evidence of Causation**

Temporal proximity represents an important factor in the causation inquiry. *Stegall*, 350 F.3d at 1069 (internal quotations omitted); *Villiarimo*, 281 F.3d at 1064; *Fried v. Wynn Las Vegas, LLC*, No. 20-15710, 2021 U.S. App. LEXIS 34269, at *6 (9th Cir. 2021). Temporal proximity carries greater weight in the causation inquiry when coupled with an employer's knowledge of the employee's engagement in a protected activity. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *see also Fried*, 2021 U.S. App. LEXIS 34269, at *6.

Staton filed an HR complaint on October 23, 2019, alleging harassment and a hostile work environment. (Doc. 217 at 3; Doc. 242-3 at 2–4.) BSB retained an outside investigator to address Staton's complaint. Staton sent an email to HR contesting the findings of the outside investigator on January 24, 2020. (Doc. 245-2 at 1–2.) Sheriff Lester placed Staton on leave approximately one month after Staton challenged the HR investigation into her complaint (Doc. 242-5 at 1.) Sheriff Lester required Staton to undergo an FFDE and received the FFDE report on April 27, 2020. (*Id.*) Sheriff Lester sent a letter indicating his intent to terminate Staton on July 27, 2020. Staton contested the termination and FFDE process on August 3, 2020. Sheriff Lester terminated Staton's employment approximately 21 days later on August 24, 2020. (*Id.*, ¶ 60.)

BSB argues that the ten-month span between Staton filing her HR complaint and Staton's termination represents too much time to infer causation. (Doc. 262 at

4.) BSB cites *Villiarimo* to support its argument. (Doc. 262 at 4.) The Ninth Circuit determined in *Villiarimo* that an eighteen-month span between protected activity and the adverse employment action proved too long, on its own, to support an inference of causation. 281 F.3d at 1066. BSB's argument ignores the continuity between Staton's complaint and her termination.

BSB received the complaint and concluded an investigation approximately three months later. Staton contested the results of that investigation via email. Sheriff Lester directly relied on parts of that email as his reason for sending Staton for an FFDE. Staton challenged the results of the FFDE. BSB terminated Staton within approximately 21 days of her challenge. Approximately ten months elapsed from the HR complaint to Staton's termination, but a clear temporal connection exists between Staton's HR complaint, Staton's challenge to the handling of her HR complaint, Staton's FFDE, Staton's challenge to the FFDE, and Staton's termination.

This temporal connection provides some evidence to support the causation element. The Court need not determine, however, whether the temporal proximity between Staton's complaint and her termination proves sufficient on its own for a jury to find causation. Staton presented a variety of other circumstantial evidence at trial from which a reasonable juror could have found "but-for" causation.

Staton presented evidence that the HR Department forwarded Staton's complaint to Sheriff Lester on the day that Staton filed it. (Doc. 242-3 at 1.) George Holland, a subject of the complaint, testified that Sheriff Lester brought him into the office within a week of Staton filing her complaint and allowed Holland to review the complaint. Holland further testified that Holland later advised the other subject of Staton's HR complaint, Jeff Williams, that Staton had made an HR complaint about Williams. Staton presented expert testimony that notifying subjects of a complaint increases the risk of retaliation, especially when those subjects serve as supervisors of the complainant. Staton's expert further testified that BSB deviated from industry standards when handling Staton's HR complaint.

Staton also presented evidence that BSB had chosen to use Dr. Watson for Staton's FFDE despite using a different evaluator for its new-hire evaluations and that Dr. Watson communicated regularly with Sheriff Lester and Undersheriff Skuletich throughout the FFDE process. Staton presented evidence of some of these communications including emails from Dr. Watson that he was going beyond the normal scope of an FFDE for Staton's evaluation (Doc. 242-12 at 1) and requests by Dr. Watson that BSB cover any legal expenses that Dr. Watson might incur. (Doc. 242-13 at 1.) Staton produced expert testimony that these communications deviated from normal standards in an FFDE process and put the independence of the FFDE at risk.

8

Other communications involved references to a "need to develop your plan" and helping "decide your strategy" that reasonably could be interpreted to support Staton's theory of a conspiracy to concoct an FFDE that would justify terminating Staton. (Doc. 242-9 at 2; Doc. 242-6 at 6.) Staton produced the return-to-work document that she submitted to Dr. Watson that discusses her complaints of a hostile work environment and her HR complaint. (Doc. 242-7.) Staton presented testimony that BSB solicited responses to this document from other detectives and that Dr. Watson received a statement from Holland. In other words, Staton's evidence demonstrated that BSB solicited involvement from one of the subjects of Staton's HR complaint in the FFDE process.

Finally, Dr. William Patenaude testified that Staton's later psychological evaluation indicated no psychological issues. Dr. Patenaude explained that the difference in the findings could be because Staton was a psychologically healthy person, Staton was embellishing to represent herself in a more favorable light, or that Staton lacked insight on her own psychological health. Dr. Patenaude testified that he could not say to a medical degree of certainty which explanation proved true.

Staton presented sufficient evidence for a jury to conclude that Staton's HR complaint was the "but-for" cause of her termination. Staton presented evidence that she filed an HR complaint and challenged the results of the investigation into the complaint. Staton presented evidence that within a month after challenging the

9

findings on her HR complaint Sheriff Lester sent her for an FFDE. Staton further

demonstrated that Sheriff Lester relied on language from her email challenging the

findings on her HR complaint to justify sending her for the FFDE. Staton produced

evidence from which a reasonable juror could conclude the FFDE process proved

collusive and pretextual. Sheriff Lester testified that but for the results of her FFDE,

BSB would not have terminated Staton. Staton produced substantial evidence that,

when drawing all inferences in her favor, proved sufficient for a jury to find in favor

of Staton on the causation element of her retaliation claim.

### ii. Legitimate, Non-Discriminatory Reason

BSB contends that BSB is also entitled to judgment as a matter of law because

BSB has offered a legitimate, non-discriminatory reason for terminating Staton. BSB

cites performance issues including Staton neglecting her cases, losing her taser, and

committing several errors in the investigation of a homicide. (Doc. 262 at 4–5.) BSB

also cites Dr. Watson's determination that Staton was unfit for duty. BSB argues that

Staton failed to produce evidence to show that any of these proffered non-

discriminatory reasons represent a pretext.

The Court rejects the first argument regarding performance issues. Sheriff

Lester cited the performance issues in his July 27, 2020 letter. Sheriff Lester

affirmatively testified, however, that Staton had no disciplinary reports in her file.

Sheriff Lester further testified that he would not have terminated Staton absent the

unfit for duty determination made by Dr. Watson. Sheriff Lester confirmed that the performance issues would have resulted in discipline but not termination. The Court accordingly rejects the argument that BSB terminated Staton for performance issues.

The Court also rejects BSB's argument that Staton failed to produce sufficient evidence for a jury to conclude that the FFDE was pretextual. As outlined above, Staton presented evidence to the jury that Dr. Watson and BSB engaged in improper communications throughout the FFDE process and that Dr. Watson departed from the normal FFDE procedure. Sheriff Lester sought the FFDE based upon language in an email that Staton sent contesting the findings on her HR complaint. Staton presented evidence that BSB handled her HR complaint inappropriately by disclosing it to her co-workers that were subjects of the complaint. Testimony at trial also demonstrated that BSB asked one of the subjects of her complaint to provide a statement to Dr. Watson before Dr. Watson performed the FFDE.

BSB contends that Staton's agreement that she was unfit for duty proves sufficient to grant this motion for judgment as a matter of law. The Court disagrees. Staton conceded that the test scores reported by Dr. Watson indicated someone unfit for duty, but Staton consistently challenged the evaluation itself and its accuracy. Staton, in fact, presented evidence that one possible explanation for Dr. Patenaude's

subsequent testing showing no psychological issues with Staton is that Staton was a psychologically healthy person.

The Court must view all evidentiary inferences in favor of Staton and must avoid making credibility determinations in deciding this motion. In doing so, the Court finds that a reasonable juror could have concluded that the reasons offered by BSB for Staton's termination, including the determination that she was unfit for duty, proved pretextual. Staton presented specific and substantial evidence from which a reasonable juror could conclude that BSB's reasons for terminating her proved pretextual. This evidence included a temporal connection between the HR complaint and the termination, alleged mishandling of the HR complaint, knowledge of the HR complaint, a connection between Staton challenging the HR investigation and her referral for an FFDE, communications that could be interpreted to suggest collusion between Dr. Watson, Sheriff Lester, and Undersheriff Skuletich, and deviations in the FFDE procedure.

### iii.    Retaliatory Animus

BSB argues that Staton failed to present sufficient evidence that the person responsible for her termination, Sheriff Lester, held retaliatory animus towards Staton. In addition to the evidence discussed above on improper communications between Sheriff Lester and Dr. Watson, Staton also presented evidence that Sheriff Lester deviated from policy in terminating Staton. The jury received evidence that

BSB LED policy required Sheriff Lester to form a board to evaluate permanent psychological conditions and make a final determination as to the employee's ability to perform their duties. (Doc. 254-4 at 3–4.) Sheriff Lester admitted that he had not formed such a board in Staton's case.

Sheriff Lester also testified that behavioral health problems prove inherent to most law enforcement officers due to their exposure to stress and traumatic incidents. Sheriff Lester admitted that BSB LED recognized that most behavioral health problems remain correctable with intervention and treatment. Staton presented expert testimony that communities would lose approximately 85% of all officers if LEDs terminated everyone with mental health conditions. Staton also presented evidence that no other officer referred for an FFDE by Sheriff Lester has been found unfit for duty or terminated despite one having to attend counseling. This evidence along with the other evidence surrounding the FFDE and handling of the HR complaint provide a sufficient basis for a reasonable juror to conclude that Sheriff Lester terminated Staton because of her HR complaint.

## CONCLUSION

The Court denies BSB's motion for judgment as a matter of law. BSB failed to meet the high bar of showing that no reasonable jury could find in favor of Staton. Staton presented sufficient evidence to establish "but-for" causation for her

retaliation claim. Accordingly, the Court refuses to disturb the jury's determination

that Staton proved her retaliation claim by a preponderance of the evidence.

### ORDER

Accordingly, **IT IS ORDERED** that BSB's Motion for Judgment as a Matter

of Law (Doc. 261) is **DENIED**.

DATED this 30th day of May, 2024.

_____

Brian Morris, Chief District Judge
United States District Court