## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| RHONDA STATON,<br><br>      Plaintiff,<br><br> vs.<br><br>CITY & COUNTY OF BUTTE-SILVER<br>BOW and DOES 1-10,<br><br>      Defendants. | **CV-20-60-BU-BMM**<br><br><br>**ORDER** |

### INTRODUCTION

The Court held a jury trial in this matter from February 12, 2024, to February 16, 2024. (Doc. 221; Doc. 225; Doc. 228; Doc. 229; Doc. 234.) The jury found in favor of Defendant City and County of Butte-Silver Bow ("BSB") on Plaintiff Rhonda Staton's claims for hostile work environment and disability discrimination. (Doc. 241 at 1–2.) The jury rendered a verdict in Staton's favor on the retaliation claim and awarded Staton $349,000 in damages. (*Id.* at 1, 3.) Staton has moved to amend the judgment to include prejudgment interest (Doc. 250) and filed an application for taxation of costs (Doc. 252). BSB opposes these motions. (Doc. 257; Doc. 266.) BSB has filed a motion to reduce Staton's invoice for re-opening depositions (Doc. 255) and has filed its own application for taxation of costs (Doc.

1

254). The Court recognizes that Staton has filed a motion for attorney's fees (Doc. 247) as well. The Court will address that motion in a separate order.

## BACKGROUND

Staton worked for BSB's Law Enforcement Department ("LED") from December 10, 2001, until August 24, 2020. (Doc. 217 at 3.) Staton brought claims against BSB for hostile work environment, sex discrimination, disability discrimination, retaliation, violation of the Family and Medical Leave Act ("FMLA"), and infliction of emotional distress. (Doc. 7 at 17–27.) Staton also asserted a claim for punitive damages. (*Id.* at 28.)

The Court dismissed Staton's claims for emotional distress, punitive damages, and violation of the FMLA. (Doc. 63 at 10; Doc. 160 at 37.) The Court also dismissed Sheriff Ed Lester as a defendant. (Doc. 63 at 10.) Staton voluntarily dismissed two other defendants. (Doc. 27 at 2.) Staton withdrew her claims of sex discrimination and discrimination due to perceived disability at trial. (Doc. 234.) Staton submitted claims of retaliation, failure to accommodate, and hostile work environment to the jury. The jury rendered a verdict in favor of Staton on the retaliation claim and in favor of BSB on the other two claims. (Doc. 241.)

## DISCUSSION

The Court first will address the motion to amend the judgment to include prejudgment interest. The Court then will turn to BSB's motion to reduce the

deposition invoice submitted by Staton. The Court finally will examine both parties'
applications for taxation of costs.

### a. Prejudgment Interest

Staton initially sought prejudgment interest on all damages awarded by the
jury from the date of termination to the date of the verdict for a total prejudgment
interest of $62,540.10. (Doc. 251 at 2–4.) Staton, in her reply brief, withdrew her
request for interest on the future wage portion of the jury's verdict. (Doc. 263 at 3.)
Staton now seeks prejudgment interest in the amount of $42,111.53. This amount
represents interest on the jury's award of $175,000 for past wages and $60,000 for
emotional distress. (Doc. 263 at 3.) Staton argues that prejudgment interest proves
necessary to compensate Staton fully for her loss. (*Id.* at 2.)

BSB urges the Court to deny Staton's request for prejudgment interest on three
grounds. BSB contends that Staton's expert already included prejudgment interest
in the damages amounts that the expert offered to the jury in her testimony. (Doc.
257 at 3–4.) BSB further contends that prejudgment interest would prove inequitable
based on Staton's other ongoing litigations, Staton's failure to mitigate losses, and
Staton's delay in bringing this suit. (*Id.* at 5–6, 8.) Finally, BSB argues that the
absence of malice weighs against awarding prejudgment interest.

A court maintains discretion to apply the federal pre-judgment interest
standard where the Court possesses both diversity and federal question jurisdiction

over the relevant claims. *Rhoten v. Rocking J. Ranch, LLC*, CV 21-46-M-DLC, 2022 U.S. Dist. LEXIS 211722, at *4–5 (D. Mont. Nov. 22, 2022) (citing *ECDC Envtl., L.C. v. New York Marine & Gen. Ins. Co.*, 96 Civ. 6033 (BSJ), 1999 U.S. Dist. LEXIS 9836, at *37 (S.D.N.Y. June 29, 1999) and *Warfield v. Alaniz*, No. CV 03-2390-PHX-JAT, 2007 U.S. Dist. LEXIS 51527, at *7–8 (D. Ariz. July 16, 2007)); *see also Ballou v. McElvain*, CASE NO. 3:19-cv-05002-DGE, 2024 U.S. Dist. LEXIS 74049, at *7 (W.D. Wash. Apr. 23, 2024). "[T]he ultimate decision whether to award prejudgment interest lies within the court's sound discretion, to be answered by the balancing of equities." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).

Prejudgment interest recognizes the time value of money and helps compensate a party "for a loss suffered at time t and not compensated until t + 1." *United States v. Pend Oreille County Pub. Util. Dist. No. 1*, 135 F.3d 602, 613 (9th Cir. 1998). An award of prejudgment interest "reflects the victim's loss due to [an] inability to use the money for a productive purpose and serves to compensate the injured party for the loss of use of [their] money 'from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury." *Stafford v. Fockaert*, 366 P.3d 673, 679 (Mont. 2016) (quoting *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987)). "Interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to

4

considerations of fairness." *Pend Oreille County Pub. Util. Dist. No. 1*, 135 F.3d at 613 (internal citations omitted).

The Ninth Circuit has identified several factors for consideration in determining if and how much prejudgment interest to award in securities cases. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989). The Court finds that several of these factors prove worthy of consideration in non-securities cases, such as Staton's case. These factors include the following: (1) whether prejudgment interest proves necessary to compensate the plaintiff fully for [their] injuries; (2) the degree of personal wrongdoing on the part of the defendant; (3) whether the plaintiff delayed in bringing or prosecuting the action; and (4) other fundamental considerations of fairness. *Osterneck*, 489 U.S. at 176.

A question exists whether prejudgment interest proves necessary to compensate Staton for her injuries. The Court recognizes the time value of money. The Court also recognizes, however, that Staton's economic expert, Ann Adair, testified at trial that her damages estimate included a "present value" calculation for the damages. Adair described the process of obtaining the present value of future damages. This process involved discounting future damages to account for the fact that the injured party could receive a lesser amount today and reasonably invest it to produce more money in the future. Adair testified that she did a similar thing with past amounts but then only referred to adjusting the damages amounts for inflation.

5

The Court remains uncertain based on Adair's testimony whether the damages amount heard by the jury accounted only for inflation, as argued by Staton, or accounted for interest, as argued by BSB. The Court also recognizes that Staton has several other ongoing cases that could produce remedies duplicative of the lost wages award in this case. (*See, e.g.,* Doc. 167-1 at 88.) Principles of fairness weigh against allowing a windfall recovery. *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1442 (9th Cir. 1996). The uncertainty as to whether the jury's damages award included prejudgment interest based on Adair's testimony and the other avenues of recovery that Staton actively pursues weigh against finding prejudgment interest to be necessary to compensate Staton for her injury.

The "wrongfulness of the defendant" factor weighs in favor of awarding prejudgment interest. BSB argues a lack of malice or malintent. The jury found, however, that BSB retaliated against Staton for engaging in activity protected under Title VII of the Civil Rights Act. Title VII of the Civil Rights Act and its prohibition on retaliation represent important protections against unlawful discrimination. BSB contends that minimal, if any, wrongful conduct can be attributed to BSB because BSB "made substantial attempts to get Staton 'back on track.'" (Doc. 257 at 7.) The jury rejected these arguments and determined that BSB terminated Staton for engaging in protected activity. Accordingly, this factor weighs in favor of awarding prejudgment interest. The Court also notes, however, that the evidence presented at

6

trial showed that BSB offered Staton another job after it made the decision to terminate her and extended her paid leave for three months when her father died to allow her time to grieve before terminating her. This evidence mitigates the wrongfulness of BSB's conduct such that this factor weighs only moderately in favor of awarding interest.

Finally, the Court finds that Staton's delay in prosecuting this action weighs heavily against awarding prejudgment interest. Staton filed two motions to extend the time to serve the complaint in this case. (Doc. 3; Doc. 5.) The Court recognizes that these extensions proved necessary due to the MHRB and EEOC filings. The Court notes, however, that Staton filed several other extensions in this case: three motions to extend the scheduling order (Doc. 25; Doc. 29; Doc. 38), three motions to extend the deadlines for responding to pending motions (Doc. 42; Doc. 47; Doc. 98), and one motion to extend the pretrial motions deadline. (Doc. 86.) BSB opposed several of these requested extensions. (Doc. 42 at 2; Doc. 47 at 2; Doc. 50 at 5.)

BSB, in comparison, filed one motion to extend the pretrial motions deadline (Doc. 73), one motion to reschedule a hearing (Doc. 102), and two motions for an extension of time to file certain documents. (Doc. 117; Doc. 123.) The Court also notes that Staton filed a motion to amend her complaint and join a new defendant approximately two years and six months after having commenced this action. (Doc. 93.) Staton's conduct in prosecuting this action substantially extended the time

between her termination and her award of damages. To award Staton interest for delay that she caused proves inequitable and unfair.

Fairness represents the paramount consideration in determining if and how much prejudgment interest to award. *Blau v. Lehman*, 368 U.S. 403, 414 (1962); *Pend Oreille County Pub. Util. Dist. No. 1*, 135 F.3d at 613. The Court finds that an award of prejudgment interest would not prove fair under the circumstances presented here. BSB's conduct represents the only factor that weighs in favor of awarding prejudgment interest. The risk of allowing a windfall, the uncertainty of whether the jury's award accounted for prejudgment interest due to Adair's testimony, and Staton's delay in prosecuting this action outweigh the wrongfulness of BSB's conduct. Prejudgment interest proves unnecessary to compensate Staton fully and proves unfair due to Staton's delay in prosecuting the case. The Court accordingly declines to award prejudgment interest.

### b. Deposition Invoice

A district court possesses "'broad discretion in supervising the pretrial phase of litigation.'" *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992)). Sanctions imposed for discovery violations "must be left to the sound discretion of the trial judge." *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th

Cir. 1976) (citing *Craig v. Far West Engineering Co.*, 265 F.2d 251, 260 (9th Cir. 1959)).

The Court permitted Staton to reopen the depositions of Dr. George Watson and Sheriff Lester to ask about a late produced text-message chain. (Doc. 161 at 7; Doc. 164 at 2.) The Court assessed the costs and fees, including reasonable attorney's fees, associated with the limited depositions to BSB as a sanction for the late discovery. (Doc. 161 at 7.) Staton submitted an invoice to BSB for $8,056.76 for the costs associated with the limited depositions. (Doc. 256-2.) The invoice consists of $2,421.65 in fees paid to the court reporting company, $111.36 in mileage, and $5,523.75 in attorney's fees. (*Id.*) BSB argues that the amount sought by Staton proves unreasonable in the rate charged for the attorney's services, the amount of time claimed, the length of the deposition of Dr. Watson, and the mileage claimed. (Doc. 256 at 3–5.)

The Court agrees that the amount claimed by Staton appears unreasonable. Staton's counsel billed 13.3 hours for the preparation and taking of the limited depositions. (Doc. 256-2.) Staton's counsel discounted some of these hours such that the actual number of hours for which Staton's counsel charged totals 10.875. (*Id.*) Staton argues that spending this amount of time on the two depositions proves reasonable because BSB spent approximately half that amount of time, 5.1 hours, reopening the deposition of one witness. (Doc. 258 at 3.) Staton's argument ignores

9

two facts. Although Staton conducted two limited depositions, the depositions covered the same subject matter. Both depositions covered the late produced text message chain. Preparation for one of the depositions should have covered most of the preparation for the other deposition. Second, BSB's reopened deposition related to an updated expert analysis with different assumptions, a change in the calculation of retirement benefits, and a change in present value calculations. (Doc. 166-1.) The limited depositions here concerned 12 pages of text messages. (Doc. 256-1.) The former reasonably could be expected to require more time than the latter.

The Court also notes that Staton's counsel sent its most expensive lawyer to carry out the deposition, and, in fact, a lawyer who charges the same amount for travel time as BSB's lawyers charge for legal services. The Court also notes that the deposition fees included a charge for video recording, which as the Court discusses below, appears to have been unnecessary. Staton could have conducted the limited depositions via videoconference. Staton's decision to conduct the limited depositions in person increased the cost by $111.36 for mileage and $630 for Staton's counsel's travel time. Staton made this decision during the same time Staton asked the Court to allow her to avoid costs that the Court similarly had imposed as a discovery sanction. (Doc. 172.)

Finally, Staton's invoice indicates that the deposition of Sheriff Lester lasted approximately 36 minutes while the deposition of Dr. Watson lasted three hours.

10

Staton provided no explanation as to why it proved necessary to depose Dr. Watson for five times the length of time as that required to depose Sheriff Lester on the same topic. Staton's invoice also shows substantial disparity in the time spent preparing for the two depositions. Staton's counsel billed 2 hours to prepare for Sheriff Lester's deposition and 7.7 hours to prepare for Dr. Watson's deposition. The Court struggles to find such disparities reasonable where the depositions were supposed to cover the same subject matter. The disparate length of time spent on Dr. Watson's deposition and preparation increased not only the attorney's fees but also the deposition costs. The Court will reduce these accordingly.

The Court finds it reasonable to reduce the court reporter fees to account for videography fees, eliminate attorney travel time, and reduce the amount of time billed for preparing for and conducting Dr. Watson's deposition. Accordingly, the Court, in its discretion in fashioning the appropriate discovery sanction, finds it appropriate to reduce Staton's deposition invoice to $2,800.

### c. **Staton's Bill of Costs**

Staton seeks $26,235.49 in taxable costs. (Doc. 252 at 1.) Staton's claimed costs include a $400 payment to the Clerk of Court, $957.50 paid for the service of summons, $22,381.30 incurred in deposition fees, $1,877.40 incurred for printing, and $545.23 incurred in witness fees. BSB challenges the requested fees. BSB first argues that Staton does not constitute a prevailing party since Staton prevailed only

on one of her claims. The Court first addresses this challenge. The Court then will

turn to BSB's challenges to each individual category of costs.

### i.   Prevailing Party

BSB argues that Staton does not qualify as a prevailing party for purposes of

awarding costs under Fed. R. Civ. P. 54(d). (Doc. 266 at 3.) Staton's initial pleadings

asserted seven claims against the LED, seven claims against the Board of County

Commissioners, seven claims against Sheriff Lester, and eight claims against BSB.

(*Id.* at 4.) BSB notes that Staton stipulated to dismissing all claims against the LED

and Board of County Commissioners. (*Id.*) The Court granted summary judgment

on all claims against Sheriff Lester and on Staton's claims against BSB for violation

of the FMLA, infliction of emotional distress, and punitive damages. (*Id.*) This left

five claims to proceed to trial. BSB notes that Staton dismissed two of these claims

prior to giving the case to the jury and that the jury rendered a verdict in BSB's favor

on another two of these claims. BSB argues that Staton's success on one out of

fifteen claims cannot give her "prevailing party" status.

"[A] party in whose favor judgment is rendered is generally the prevailing

party for purposes of awarding costs under Rule 54(d)." *San Diego Police Officers'*

*Ass'n v. San Diego City Emples. Ret. Sys.*, 568 F.3d 725, 741 (9th Cir. 2009) (internal

quotations omitted). A party need not prevail on all its claims for the court to find

that the party constitutes the "prevailing party." *Id.* "The threshold for sufficient

relief to confer prevailing party status is not high." *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009). The Ninth Circuit has determined that "[i]f the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold." *Id.* (internal quotations omitted, cleaned up). "In the event of a mixed judgment, however, it is within the discretion of a district court to require each party to bear its own costs." *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996). Where one party prevailed on one claim and another party prevailed on another claim, a court may consider the extent of a party's victory in apportioning costs. *Williams v. Gaye*, 895 F.3d 1106, 1133 (9th Cir. 2018).

No doubt exists that Staton counts as a prevailing party for purposes of her retaliation claim. The jury rendered a verdict in her favor on this claim and awarded her monetary damages. BSB received a verdict in its favor on the other two claims submitted to the jury. The Court recognizes, however, the role that Staton's hostile work environment claim and failure to accommodate claim played in Staton's success on her retaliation claim. The Court instructed the jury, as requested by BSB, that for Staton's conduct to constitute protected activity, Staton must have had a reasonable belief that she was reporting illegal conduct. (Doc. 246 at 10; Doc. 206 at 15.) Staton's retaliation claim required Staton to prove that she based her complaint on a reasonable belief that she was reporting conduct that violated Title

13

VII. Proof of this fact required at least some showing of the grounds of her complaint arising from the alleged hostile work environment.

The Court also recognizes the importance of Title VII's prohibition on retaliation and the fact that the costs of litigation can be prohibitive to civil rights plaintiffs of modest means. *See Stanley v. University of S. California*, 178 F.3d 1069, 1079–80 (9th Cir. 1999). The interrelatedness of the claims and the strong policy encouraging private citizens to bring Title VII suits leads the Court to find that requiring the parties to bear their own costs would prove inappropriate. The Court also finds, however, that a 10% reduction in Staton's taxed costs proves appropriate "to reflect the extent of [Staton's] victory." *Williams*, 895 F.3d at 1133.

### ii.    Service of Summons

BSB notes that Staton's application of costs seeks fees for serving witnesses that Staton elected not to call at trial including Mark St. Pierre, George Skuletich, and Ray Vaughn. The Court will not award costs for serving these employees, as Staton's failure to call these witnesses shows that their testimony proved unnecessary to her claims. BSB also contends that BSB offered to accept service on behalf of all BSB employees, which would have included Williams, Vaughn, and Skuletich but not George Holland since he was retired by the time of trial.

The Court also notes that three of the subpoenas listed in Staton's application of costs were served in 2022 and 2023. Staton failed to show why the service of

14

these subpoenas proved necessary to her case. The Court suspects that these may have been subpoenas to appear at scheduled depositions, but Staton has failed to produce documentation to support an award for these costs. The Court will permit Staton to recover only $252.50 in service of process fees for the service of subpoenas on William Patenaude, George Watson, and George Holland.

### iii.    Deposition Fees

BSB disputes the deposition fees claimed by Staton on several grounds. BSB first contends that obtaining video recordings of every deposition proved unnecessary. (Doc. 266 at 6.) BSB notes that Staton never used a single video deposition throughout trial and relied only on the written transcripts. BSB further asks the Court to deny any deposition fees for witnesses not called at trial and witnesses not relevant to the retaliation claim. (*Id.*) Finally, BSB argues that Staton used a more expensive national court reporting firm for depositions when Staton could have used a reasonably priced local firm. (*Id.*)

The Court will sustain some of these objections. Section 1920(2) of Title 28 of the United States Code allows "[f]ees for printed or electronically recorded transcripts *necessarily obtained for use in the case*." (emphasis added). Staton has failed to explain why both video and written transcripts of the deposition proved necessary, especially given Staton's failure to use any video depositions at trial. The Court will not award costs for the videography fees and video recordings. The Court

15

also notes that Staton never called Doug Conway, failed to include Conway even as a "may call" witness, and never referenced Conway's deposition throughout the pretrial or trial proceedings. The Court will not award costs for this deposition. Staton, on the other hand, used the depositions of Edmunds, Clark, Dr. Watson, Williams, Stiffler, and Adair among others in the trial process, pretrial briefing, and summary judgment proceedings. The Court will award the costs of these depositions minus the costs associated with the videos.

Finally, the Court denies BSB's objection regarding Staton's use of a national court reporting company. The deposition fees (minus the video fees) charged by the national company for the deposition of two witnesses, Mark Muir and Leslie Clark, prove just over double that of the fees charged by the local companies for the deposition of one witness. (*Compare* Doc. 252 at 23, 25 to Doc. 252 at 19–20.) The Court lacks information about the length of each deposition, but on the information presented, the Court cannot say that the fees paid to the national company proved unreasonably high.

The Court also notes that Staton failed to produce an invoice for the $3,443.60 in fees incurred for Dr. Watson's deposition. The Court cannot determine how much was charged related to videography. The Court will assume the videography fees to be approximately 40% of the total invoice, as that appears to have been the case with both other invoices from that same court reporting agency. (Doc. 252 at 26, 30.)

Accordingly, the Court will discount this claimed amount by 40%. Excluding the fees for Conway's deposition and the fees related to videography of the depositions, the Court will award deposition fees in the amount of $13,334.91.

### iv.    Printing

BSB objects to the award of Staton's claimed printing costs on the grounds that Staton has not submitted sufficient documentation of these expenses. (Doc. 266 at 5.) Staton submitted a spreadsheet that appears to indicate the type of document printed, the number of pages, and a price of $0.20 per page. The types of documents indicated in Staton's spreadsheet appear to be documents necessary for use in the case including initial disclosures, deposition exhibits, trial exhibits, and documents for the trial notebook. The Court will award these costs in the full amount requested.

### v.    Witness Fees

BSB correctly notes that Staton's application of costs claims witness fees for two witnesses that Staton never called—Skuletich and Vaughn. The Court will exclude the costs claimed for those two witnesses. The Court will award only $452.13 of Staton's claimed witness fees.

### d.  BSB's Bill of Costs

A party must file an application for taxation of costs within 14 days of entry of the judgment that allows such costs. L.R. 54.1(a). The Court entered judgment in this case on February 16, 2024. This means that the parties had until March 1, 2024, to file an application for taxation of costs. BSB failed to file its application within

that time period. The Court denies BSB's application for taxation of costs. (Doc. 254.)

## CONCLUSION

The Court finds that prejudgment interest proves unnecessary to compensate Staton fully and that an award of prejudgment interest would prove unfair under the circumstances presented here. The Court accordingly declines to award prejudgment interest. The Court grants BSB's motion to reduce Staton's invoice for reopening the deposition of Dr. Watson and Sheriff Lester. The Court grants Staton's application for taxation of costs, with reductions in the amounts to be awarded. The Court denies BSB's application for taxation of costs due to untimeliness.

## ORDER

Accordingly, **IT IS ORDERED** that:

1.  Staton's Motion to Amend/Correct Clerk's Judgment to include prejudgment interest (Doc. 250) is **DENIED**.

2.  BSB's Motion to Reduce Plaintiff's Invoice for Reopening Depositions (Doc. 255) is **GRANTED**. BSB is hereby ordered to pay Staton $2,800 for the reopened depositions of Sheriff Lester and Dr. Watson.

3.  Staton's Application for Taxation of Costs (Doc. 252) is **GRANTED**, in part, and **DENIED**, in part. The Court will award $14,685.25 in taxable costs to Staton according to the following breakdown:

| | |
|---|---|
| Service of Summons | $    252.50 |
| Deposition Fees | $ 13,334.91 |
| Printing | $  1,877.40 |
| Witness Fees | $    452.13 |
| Total | $ 16,316.94 |
| -10% Discount | - $  1,631.69 |
| **Awarded Costs** | **$ 14,685.25** |

4.    BSB's Application for Taxation of Costs (Doc. 254) is **DENIED**.

DATED this 31st day of May, 2024.

_____
Brian Morris, Chief District Judge
United States District Court

19