**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| RHONDA STATON, | |
| Plaintiff, | **CV-20-60-BU-BMM** |
| vs. | **ORDER** |
| CITY & COUNTY OF BUTTE-SILVER BOW and DOES 1-10, | |
| Defendants. | |

## INTRODUCTION

The Court held a jury trial in this matter from February 12, 2024, to February 16, 2024. (Doc. 221; Doc. 225; Doc. 228; Doc. 229; Doc. 234.) The jury found in favor of Defendant City and County of Butte-Silver Bow ("BSB") on Plaintiff Rhonda Staton's claims for hostile work environment and disability discrimination. (Doc. 241 at 1–2.) The jury rendered a verdict in favor of Staton on Staton's retaliation claim and awarded Staton $349,000 in damages. (*Id.* at 1, 3.) Staton has filed a motion for attorney's fees. (Doc. 247.) BSB opposes this motion. (Doc. 260).

## BACKGROUND

Staton worked for BSB's Law Enforcement Department ("LED") from December 10, 2001, until August 24, 2020. (Doc. 217 at 3.) Staton brought claims against BSB for hostile work environment, sex discrimination, disability

1

discrimination, retaliation, violation of the Family and Medical Leave Act ("FMLA"), and emotional distress. (Doc. 7 at 17–27.) Staton also asserted a claim for punitive damages. (*Id.* at 28.)

The Court dismissed Staton's claims for emotional distress, punitive damages, and violation of FMLA. (Doc. 63 at 10; Doc. 160 at 37.) The Court also dismissed Sheriff Ed Lester as a defendant. (Doc. 63 at 10.) Staton voluntarily dismissed the Butte-Silver Bow LED and the Board of County Commissioners of Butte-Silver Bow. (Doc. 27 at 2.) Staton also voluntarily dismissed her claim of sex discrimination and one claim for disability discrimination before submitting the case to the jury. (Doc. 234.) Staton submitted claims of retaliation, failure to accommodate, and hostile work environment to the jury. The jury rendered a verdict in favor of Staton on the retaliation claim and in favor of BSB on the other two claims. (Doc. 241.)

## LEGAL STANDARD

Section 2000e-5(k) of Title 42 of the United States Code provides that the Court may allow the prevailing party in any action brought under 42 U.S.C. §§ 2000e et seq. "a reasonable attorney's fee (including expert fees) as part of the costs." A court exercises discretion in awarding attorney's fees under Title VII. *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1301 (9th Cir. 1981) (citing 42 U.S.C. § 2000e-5(k)). A court must follow, however, the two-prong approach

adopted by the Ninth Circuit for determining the appropriate amount of attorney's fees to award. "A court must first calculate a 'lodestar' figure by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Davis v. City of San Francisco*, 976 F.2d 1536, 1541 (9th Cir. 1992) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988)). "After computing the lodestar, the district court should assess whether additional considerations that [the Ninth Circuit] has enumerated require the district court to adjust the figure." *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (internal citations omitted).

## DISCUSSION

Staton seeks an award of attorney's fees in the amount of $629,137.75. Staton further seeks an award for $59,713 for paralegal fees and $39,759.83 for non-taxable costs. (Doc. 248 at 15.) BSB argues that the Court should deny Staton's request for attorney's fees and non-taxable costs. BSB contends that an insufficient evidentiary basis exists to support the jury verdict on Staton's retaliation claim. (Doc. 260 at 1.) The Court has addressed this argument previously and refers to its earlier order on this issue. (Doc. 279.) BSB further contends that Montana law prohibits an award of attorney's fees and that Staton does not constitute a prevailing party. (Doc. 260 at 2.)

BSB argues alternatively that if Staton is awarded attorney's fees, the Court must reduce the requested award significantly. (*Id.* at 1.) BSB again cites Staton's lack of success on her other claims and argues that the amount of time and hourly rate claimed prove unreasonable. (*Id.*)

## I.   Attorney's Fees

Both Title VII and the Montana Human Rights Act (MHRA) permit the Court, in its discretion, to award attorney's fees to a party that prevails in an action brought under those acts. 42 U.S.C. § 2000e-5(k); Mont. Code Ann. § 49-2-511(3)(a). No doubt exists that retaliation represents an action under both Title VII and the MHRA. 42 U.S.C. § 2000e-3(a); Mont. Code Ann. § 49-2-301. The jury found in favor of Staton on her retaliation claim but found in favor of BSB on Staton's other Title VII and MHRA claims. BSB argues that Staton may not recover attorney's fees despite her success on her retaliation claim.

### a.  Prevailing Party

"[A] prevailing plaintiff should recover attorneys' fees unless 'special circumstances' make the award unjust." *Dosier*, 656 F.2d at 1301 (citing *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)). The U.S. Supreme Court has determined that a plaintiff meets the definition of a prevailing party for the purposes of awarding attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461

4

U.S. 424, 433 (1983); *see also Davis*, 976 F.2d at 1541 n.1. A party need not prevail on all claims in order to constitute a "prevailing party." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 517–18 (9th Cir. 2000). A court may not award fees, however, for time spent on unrelated claims on which the party failed to prevail. *Hensley*, 461 U.S. at 435.

Staton prevailed on her retaliation claim. The jury awarded $349,000 in money damages related to that claim. Staton constitutes a prevailing party because she succeeded on a significant issue in the litigation (her retaliation claim) and received a benefit sought in bringing the suit (money damages). The question remains whether Staton's other claims proved unrelated to her retaliation claim such that the Court should prohibit Staton from recovering fees for work done on those other claims. Civil rights cases often involve claims for relief that "involve a common core of facts or [are] based on related legal theories." *Hensley*, 461 U.S. at 435. An attorney's time in such cases "will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* The U.S. Supreme Court has recognized that "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id.*

The Ninth Circuit addressed an issue nearly identical in *Passantino*. The claimant in *Passantino* brought claims for both sex discrimination and retaliation. 212 F.3d at 504. The jury found in favor of the claimant only on her retaliation claim.

*Id.* The Ninth Circuit noted that the claimant's retaliation claims "were inextricably intertwined with her discrimination claims." *Id.* at 518. The Ninth Circuit reasoned that "to prevail on her retaliation claims, [the claimant] had to prove that she reasonably believed that [her employer] was engaged in discriminatory activity." *Id.* (citing *Moyo v. Gomez*, 32 F.3d 1382, 1384–85 (9th Cir. 1994)). "[T]he time spent on [the claimant's] discrimination claims contributed to the success of her retaliation claims." *Id.* The Ninth Circuit accordingly upheld the award of attorney's fees.

This Court similarly has awarded attorney's fees where a claimant brought 13 other claims related to wrongful discharge and discrimination but succeeded only on a retaliation claim. *Rhoten v. Rocking J Ranch, LLC*, CV 21-46-M-DLC, 2022 U.S. Dist. LEXIS 211722, at *11 (D. Mont. Nov. 22, 2022). The Court noted that "each claim stemmed from the same allegations of harassing treatment and relied on the same legal theories." *Id.* The Montana Supreme Court has awarded attorney's fees for time spent in a multi-plaintiff case where only one plaintiff succeeded on their claim. *Edwards v. Cascade County*, 212 P.3d 289, 294 (Mont. 2009). The district court in that case reduced the attorney's fees award by 74 hours to account for time spent on the unsuccessful plaintiffs' cases. *Id.* at 292. The Montana Supreme Court determined that the claims "involve[d] a core set of facts and [were] based on the same legal theory." *Id.* at 293. The Court further determined that substantial

6

evidence existed that the attorney's time could not be segregated between the claims. *Id.* at 294.

The Court finds unpersuasive BSB's argument that Staton's retaliation claim proved wholly distinct from her other claims. The Court applies the same reasoning used in *Rhoten*, *Passantino*, and *Edwards*. Staton's retaliation claim involved substantially the same facts, related legal theories, and substantially the same allegations as her other claims. Moreover, the Court instructed the jury, as requested by BSB, that for Staton's conduct to constitute protected activity, Staton must have had a reasonable belief that she was reporting illegal conduct. (Doc. 246 at 10; Doc. 206 at 15.) BSB may have stipulated to the fact that Staton filed an HR complaint, but Staton still had the burden of proving "that she reasonably believed that [BSB] was engaged in discriminatory activity" when she filed her complaint. *Passantino*, 212 F.3d at 518. The time spent on Staton's other claims contributed to the success on her retaliation claim and thus, proves inextricably intertwined with the time spent on the claim on which she prevailed. *Id.*

The Court finds that Staton constitutes a prevailing party for the purposes of awarding attorney's fees and that Staton's discrimination, hostile work environment, and other claims prove related and intertwined with her retaliation claim. Accordingly, the time that Staton's counsel spent on her other claims proves "reasonable and compensable." *Rhoten*, 2022 U.S. Dist. LEXIS 211722, at *11.

7

### b. Montana Law

BSB argues that two Montana statutes prohibit Staton from recovering attorney's fees. (Doc. 260 at 3–4, 12.) The Court first notes that Staton brought claims under both Title VII and the MHRA. Thus, even if state law barred her from recovering attorney's fees on her MHRA claim, Staton could recover under 42 U.S.C. § 2000e-5(k) since Staton prevailed on her federal retaliation claim.

BSB argues that Mont. Code Ann. § 49-2-505(8) prohibits Staton from recovering attorney's fees because Staton failed to succeed in the Montana Human Rights Bureau ("MHRB") proceedings. BSB's argument ignores the fact that this statute relates to contested hearings. Staton never engaged in a contested hearing. (Doc. 264 at 2.) The MHRB dismissed the complaint pursuant to Mont. Code Ann. § 49-2-504(7)(b). This dismissal gave Staton the option to continue with the administrative process by filing objections or discontinuing the administrative process and commencing proceedings in district court. Mont. Code Ann. § 49-2-504(7)(b). Staton chose the latter. Section 49-2-511(3)(a) permits a Court to award attorney's fees to a litigant who chooses this path. Mont. Code Ann. § 49-2-511(3)(a). BSB's argument that Staton had to prevail in the MHRB proceedings to recover attorney's fees fails in light of § 511(3)(a)'s authorization of attorney's fees for cases dismissed with a "no cause" finding.

BSB also argues that Mont. Code Ann. § 2-9-314 bars Staton's recovery of attorney's fees because Staton failed to file a copy of her fee agreement with the claim. (Doc. 260 at 12.) Section 2-9-314 requires an attorney representing a claimant in a tort claim against a governmental entity to "file with the claim a copy of the contract of employment showing specifically the terms of the fee arrangement between the attorney and the claimant." The Montana Supreme Court has determined that § 2-9-314(1) "says nothing about when the copy of the contract of employment must be filed." *Story v. Bozeman*, 791 P.2d 767, 777 (Mont. 1990). The Montana Supreme Court rejected the same argument that BSB now makes in determining that a fee agreement filed after entry of judgment met the statute's requirement. *Id.* BSB's argument that this statute prohibits Staton from recovering attorney's fees also fails, as Staton filed her fee agreement after entry of judgment. (Doc. 249-1.)

### c.  Lodestar Calculation

The Court must calculate the number of hours "reasonably expended on the litigation" and a "reasonable hourly rate" to determine the lodestar amount. *Caudle*, 224 F.3d at 1028. The calculations should involve "consideration of the results obtained by the prevailing litigant." *Id.* "Where a plaintiff has obtained excellent results, [their] attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "If, on the other hand, a plaintiff has achieved only partial or limited success,

the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. This reasoning remains true "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* A court determining an award where the plaintiff has achieved only limited success "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. A court necessarily exercises discretion in making this judgment. *Id.*

### i.   Hours Reasonably Expended

The Court first notes that Staton fell short of complete success in this case. Staton constitutes a prevailing party because she prevailed on her retaliation claim, but the jury rejected her claims for hostile work environment and failure to accommodate. Staton dismissed several claims and defendants voluntarily, and the Court dismissed others on summary judgment. The Court must account for Staton's limited success in this case in determining the hours reasonably expended on the litigation.

Staton received a verdict on only one claim against one defendant. Staton originally launched seven claims against each of the four initially named defendants. (Doc. 260-1 at 1.) The Court notes that Staton dismissed the Commissioners and LED early in the case such that limited time likely was devoted to the claims against them. The time spent developing the claims against Sheriff Lester likely contributed

10

to Staton's ability to present her claims against BSB. Staton spent a non-insubstantial amount of time, however, defending and arguing motions for summary judgment on her FMLA claim and claims against Sheriff Lester. Official immunity proved relatively clear. It also remained clear that Staton had failed to return FMLA paperwork and had been placed on a more favorable paid leave. Finally, the Court has determined that Staton's presentation of her hostile work environment and other claims to the jury likely contributed to her success on her retaliation claim. The Court would be remiss not to note, however, that Staton devoted substantial time to briefing motions for summary judgment and motions in limine related to her unsuccessful claims.

Staton relies on *Rhoten* to support her argument that she is entitled to attorney's fees despite not prevailing on every claim. (Doc. 248 at 6, 10.) The district court in *Rhoten* determined a 30% reduction in overall fees appropriate to account for the claimant's limited success at trial. 2022 U.S. Dist. LEXIS 211722, at *13. The Court similarly finds that a 30% reduction in the number of hours expended proves appropriate here to account for Staton's limited success and to avoid an excessive award.

The Court also must exclude hours from the calculation that prove "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The Court also notes that "[c]lerical tasks such as filing, scheduling, and maintaining files, are

11

usually part of the overhead charged in an attorney's hourly rate and are not recoverable." *Runs Through v. Dschaak*, CV 20-93-GF-BMM-JTJ, 2022 U.S. Dist. LEXIS 65707, at *9 (D. Mont. Apr. 8, 2022). A review of the billing spreadsheet filed by Staton's counsel shows multiple entries for clerical tasks. For example, several entries relate to calendaring deadlines (*See, e.g.,* Doc. 249-3 at 139, 141, 144) and maintaining the firm's file (*See, e.g., id.* at 160, 162, 170–71.) Other entries relate to filing documents with the Court. (*See, e.g., id.* at 138–39, 150, 161, 163.) The Court finds that reducing Staton's claimed hours by 40 proves appropriate to account for these clerical billing entries.

Further review of Staton's counsel's billing spreadsheet also shows substantial time claimed for travel. The Court recognizes travel time as compensable, but the claimed travel time appears excessive where multiple parties claim travel time for the same trip. For example, both Susan Russell and Michael Rabb claimed their full travel time at their full rate for travelling to the same hearing. (Doc. 249-3 at 178, 211.) Both Rabb and Fuller claimed travel time to attend the same deposition. (*Id.* at 74, 186.) Counsel discounted these rates to some extent, but it still resulted in approximately $1,658.50 in fee charges just for driving the 86 miles from Bozeman to Butte. The Court finds these charges excessive and unreasonable to impose on the opposing party. The Court accordingly will reduce the claimed billable hours by 10 to avoid excessive and redundant billing.

Excluding the hours spent on clerical tasks and the excessive travel charges, Staton still claims 2,015 hours for her counsel's representation in this case. The Court finds that this claimed amount proves excessive. Reviewing the spreadsheet demonstrates the excessive nature of the hours claimed. For example, Staton's counsel billed 21.2 hours on the first day of trial. This amount leaves fewer than three hours in the day for Staton's counsel to sleep, eat, and do anything other than strictly work on Staton's case. Staton's counsel billed almost one hundred hours in the week of trial with his paralegal billing another 45 hours. The Court recognizes the arduous and time-intensive nature of trial. The Court struggles to find, however, that all of this claimed time proved reasonable and necessary in presenting Staton's case, especially in light of the 133.6 hours that Staton's counsel billed for trial preparation in the two weeks leading up to the trial. Staton's counsel argues that his time billed proves commensurate with that billed by BSB. This argument ignores that BSB's counsel's billing includes substantial time spent in the entirely separate arbitration proceeding and time spent appealing the arbitration proceeding.

A comparison to similar cases also illustrates the unreasonableness in the amount of time billed. The amount of time claimed by Staton in this case proves substantially greater than the time claimed in similar cases. For example, the prevailing party in *Rhoten* claimed approximately 525 hours for all attorney and paralegal time spent on the case. (*Rhoten v. Rocking J Ranch, LLC*, No. 21-cv-46-

DLC, Doc. 105-1.) *Rhoten* involved a four-day jury trial and several pre-trial motions including a motion to dismiss, several motions for summary judgment, and motions in limine. Staton's case involved slightly more robust motion practice and a five-day trial instead of a four-day trial. Staton claims, however, 2,065.4 hours and $688,845.66 total in legal fees. This total represents nearly four times the amount of time claimed in *Rhoten* and over 6.5 times the amount of fees awarded in *Rhoten*.

The Court recognizes that Staton's case spanned a longer time period than the case in *Rhoten*. The Court still struggles with the large disparity, however, given the similarity in the claims, nature, and complexity of the cases. A court "may not 'uncritically' accept the number of hours claimed by the prevailing party, even if actually spent on the litigation, but must, in order to award fees based on them, find 'that the time actually spent was reasonably necessary.'" *Carson v. Billings Police Dep't*, 470 F.3d 889, 893 (9th Cir. 2006) (quoting *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984)). The Court cannot find that the 2,000+ hours claimed by Staton proved reasonably necessary in prosecuting this case. The Court will further reduce the hours claimed by Staton to 1,400 hours. This amount of time still proves over double that expended in the *Rhoten* litigation. This amount accounts for the extra day of trial for Staton, the more robust motion practice, the longer duration of the pre-trial proceedings, and any increased complexity relating to the FFDE and POST standards. The Court, in its discretion, finds that 1,400 hours

represents the time reasonably necessary in this litigation. Considering the limited success of Staton, as the Court must, an additional 30% reduction in this amount of time proves warranted. *Rhoten*, 2022 U.S. Dist. LEXIS 211722, at *13.

### ii.   Reasonable Rate

"[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum*, 465 U.S. at 895 n.11). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). The party seeking attorney's fees bears the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho*, 523 F.3d at 980 (quoting *Blum*, 465 U.S. at 895 n.11). "[A]ffidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Camacho*, 523 F.3d at 980 (internal quotations omitted) (cleaned up). The opposing party may rebut, however, the evidence presented by the claimant.

The relevant community for determining a reasonable hourly rate is the Butte division for the District of Montana, which consists of Butte, Bozeman, and surrounding areas. Staton's counsel submitted two affidavits in which he opined that his rates proved reasonable and in line with the market rates in Bozeman. (Doc. 249; Doc. 264-1.) Staton also submitted an affidavit from another lawyer that opined that the rates charged by Staton's counsel prove typical of or below the market rates charged in Gallatin County. (Doc. 268.) BSB submitted a rebuttal affidavit indicating that BSB's attorneys charge approximately half of what Staton's counsel charges. BSB also presented a witness at the hearing on this matter that testified that Staton's counsel's rates prove much higher than the standard market rates for western Montana. BSB's witness testified that the typical rate for private counsel not paid by insurance is $275 per hour and that no one at her firm charges more than $400 per hour.

The Ninth Circuit has set forth a variety of factors to consider in determining the appropriate hourly rate for an attorney in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–64 n.8, n.9 (9th Cir. 1996). These factors include the following: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . [and] (4) the results obtained." *Id*. at 364 n.9. The Court already has accounted for the results

16

obtained in determining the reasonable hours expended. The Court now considers the remaining factors in determining an appropriate fee.

Staton's case involved multiple claims, but nearly all claims related to the same facts or series of occurrences. The Court recognizes that discrimination law presents procedural hurdles and complexities, like the filing of a charge of discrimination with the EEOC or MHRB, that may require a more experienced attorney. The Court also recognizes, however, that Staton's claims were not novel. Title VII and the MHRA are not new laws. Substantial caselaw exists to aid in their interpretation and case analysis.

The skill of Staton's counsel ranges greatly depending on the member of the law firm performing the work in her case. The billing spreadsheet submitted by Michael Rabb shows that of the approximately 2,065 hours billed, Rachel Fuller billed 631.3 hours (30.6%), Susan Russell billed 339.7 hours (16.5%), Rabb billed 752.2 hours (36.4%), Lana Rupprecht billed 228.2 hours (11.1%), Byron Gruber billed 70.4 hours (3.4%), and Jeffrey Driggers billed 28.7 hours (1.3%). (Doc. 249-3.) The remaining staff billed less than one percent combined. Staton's counsel provided competent representation, successfully resisting motions for summary judgment, presenting motions in limine, and achieving success with the jury on one claim.

Susan Russell is not an attorney but, rather, a very experienced paralegal. Fuller was admitted to the bar in 2021 and had less than two years of experience practicing law in Montana throughout her time on this case. Rupprecht, Rabb, Driggers, and Gruber on the other hand represent more experienced counsel. Rupprecht had approximately 20 years of experience while she worked on this case with specific experience in employment law. (Doc. 264-1, ¶ 4.) Rabb has approximately 16 years of experience practicing law. (*Id.*, ¶ 14.) Driggers and Gruber have 16 and 14 years of experience, respectively. (*Id.*, ¶¶ 8, 12.)

A review of recent cases awarding attorney's fees in the District of Montana proves instructive. The district court in *Rhoten* approved rates of $395 per hour for a senior attorney with twenty years of experience, $250 per hour for a junior attorney, and between $125 and $175 for paralegals. (*See Rhoten v. Rocking J Ranch, LLC*, No. 21-cv-46-DLC, Doc. 105-1; Doc. 111.) The district court in *Runs Through* approved rates of $320, $340, and $360 per hour for a senior attorney in 2020, 2021, and 2022, respectively. 2022 U.S. Dist. LEXIS 65707, at *12. The district court in *Victory Processing, LLC v. Knudsen* approved rates of $350 for an attorney with 25 years of experience, $300 for an attorney with 15 years of experience, and $250 for an attorney with 6 years of experience. CV 17-27-H-CCL2021 U.S. Dist. LEXIS 28569, at *8 (D. Mont. Feb. 16, 2021). The district court in *Sarens USA, Inc. v.*

18

*Lowery* approved rates of $250 per hour. 525 F. Supp. 3d 1257, 1267 (D. Mont. 2021).

Even in the case cited by Staton to support her counsel's rates, the district court only approved a rate of $425 per hour for a named partner, $350 per hour for senior attorneys, $275 per hour for associate attorneys, and $110 per hour for paralegals. *Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1109 (D. Mont. 2019). These rates do not prove persuasive, however, in determining the reasonable rate for this case. The district court in *Wooten* looked to rates outside of Montana because of the lack of available attorneys in Montana who practiced in the type of railroad litigation involved in *Wooten*. 387 F. Supp. 3d at 1108. *Wooten* thus relied on rates in the Pacific Northwest rather than Montana. *Id.* The named partner in *Wooten* also had over 35 years of experience, which is much more experience than any of the attorneys who worked on Staton's case. *See Wallis v. BNSF Ry. Co.*, C13-40 TSZ, 2014 U.S. Dist. LEXIS 56834, at *6 (W.D. Wash. Apr. 23, 2024).

Michael Rabb submitted invoices showing that other clients pay his rate of $450 per hour. "That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson*, 470 F.3d at 892. The Ninth Circuit has recognized, however, that "there is such a thing as a high charger and low charger, and the district judge is supposed to use the prevailing market rate for attorneys of comparable experience,

19

skill and reputation, which may or may not be the rate charged by the individual attorney in question." *Id.* The Court finds from a review of the caselaw and the evidence presented that the reasonable rates for Staton's counsel are as follows: Rabb - $375 per hour, Rupprecht, Byron, and Driggers - $375 per hour, Fuller - $250 per hour, and Russell - $175 per hour. Taking into account the proportion of time each attorney worked on this matter, the Court finds that an average hourly rate of $300 proves reasonable.

Staton's counsel reasonably claimed 1,400 hours in this litigation. A 30% reduction in this number proves warranted to account for the level of success achieved by Staton. The Court has determined that $300 per hour represents a reasonable rate for the services provided by Staton's counsel. Accordingly, the Court will award $294,000 in attorney's fees.

### d. Adjustment to the Lodestar Figure

A strong presumption exists that the lodestar figure represents a reasonable figure for attorney's fees. *Morales*, 96 F.3d at 364 n.8. "'Only in rare instances should the lodestar figure be adjusted on the basis of other considerations.'" *Id.* (quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992)). "Since consideration of limited success is presumably 'subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate,' district courts should not ordinarily make a separate

adjustment for limited success." *Corder v. Gates*, 947 F.2d 374, 378 (9th Cir. 1991) (quoting *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988)).

The Court already accounted for Staton's limited success in determining the reasonable number of hours expended on this litigation. The Court accounted for other considerations, including the experience of counsel and complexity of the case, in determining the reasonable rate. Accordingly, no adjustments to the lodestar calculation prove warranted.

## II.    Non-taxable Costs

Staton seeks an award of $39,759.83 in non-taxable costs. This amount includes $33,192 in expert fees, which 42 U.S.C. § 2000e-5(k) expressly permits. BSB argues that the Court should deny the award of such fees because Staton's experts proved unrelated to her retaliation claim. The Court disagrees.

The testimony of Adair and Schonbrun related to damages suffered by Staton and clearly prove compensable. Brown testified about the handling of HR complaints and investigations and opined as to industry standards in those areas. This testimony clearly contributed to Staton's success on her retaliation claim. Dr. Nicoletti testified as to the alleged flaws with Dr. Watson's FFDE and the referral process. This testimony lent support to Staton's argument that the FFDE constituted a pretext for retaliation. Stiffler testified about Staton's perception of her work

21

environment, which provided necessary context for the HR complaint upon which Staton's retaliation claim relied.

The remainder of the costs claimed by Staton include federal mileage in the amount of $1,516.32, lodging in the amount of $4,676.71, and a deposition transcript for $374.80. "It is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). "Both the Supreme Court and [the Ninth Circuit] have held that the standards for determining a reasonable attorney's fee in a Title VII action pursuant to 42 U.S.C. § 2000e-5(k) are identical to those utilized in determining an attorney's fee award pursuant to 42 U.S.C. § 1988." *Davis*, 976 F.2d at 1541 n.1.

Mileage and lodging represent "reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client." *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust*, 460 F.3d at 1257. Staton's counsel's records show, however, that one of the Airbnb reservations covered a two-week stay. Trial lasted only one week, so the allowable cost for this reservation will be reduced by 50%. Finally, the Court will not award the deposition transcript costs. The $150 room charge appears unwarranted when a free room proved available. (Doc. 260 at

13.) Transcribing the arbitration hearing proves unnecessary when a video recording proved available. (*Id.* at 14.) The cost of obtaining a transcript from an unrelated criminal trial in which Williams testified proved unnecessary. The trial was unrelated to Staton's retaliation claim and other avenues existed to discover and present that information.

## CONCLUSION

The Court will grant Staton's motion for attorney's fees and non-taxable costs. The Court will grant, however, only a reduced amount in fees and costs. The Court will award $294,000 in attorney's fees. The Court also will award $37,724.53 in non-taxable costs.

## ORDER

Accordingly, **IT IS ORDERED** that Staton's Motion for Attorney's Fees and Non-Taxable Costs (Doc. 247) is **GRANTED**. The Court awards Staton $294,000 in attorney's fees. The Court also awards Staton $37,724.53 in non-taxable costs.

DATED this 3rd day of June, 2024.

Brian Morris, Chief District Judge
United States District Court